UNITED STATES *v.* BEUTTAS ET AL., TRADING AS B–W CONSTRUCTION CO.

No. 431.  Argued March 1, 1945.—Decided April 23, 1945.

*Mr. Ralph F. Fuchs*, with whom *Solicitor General Fahy, Assistant Attorney General Shea, Messrs. Paul A. Sweeney* and *Jerome H. Simonds* were on the brief, for the United States.

_____

*Mr. P. J. J. Nicolaides,* with whom *Mr. William F. Kelly* was on the brief, for respondents.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The respondents executed a contract with the petitioner whereby they agreed to construct the foundations for a public housing project. By Article 19 they agreed that workmen of designated classes should be paid specified minimum wages, and if, during the progress of the work, the petitioner should find it desirable that wages higher than those specified should be paid, it might establish different rates, and in such case the contract price should be adjusted accordingly.

The respondents paid wages higher than those named in the contract, and brought this action, *inter alia,* to recover the difference. They introduced evidence to prove that commencement of the work was suspended by delays on the part of petitioner's officers and by other conditions for which the respondents were not responsible; that during the period of suspension the petitioner asked bids for erection of the superstructure, and by its advertisement required bidders to pay higher rates to the same classes of workmen than the minima specified in the respondents' contract; that when respondents' employees learned of this they demanded wages equal to those that were to be paid for work on the superstructure; and that to obtain workers and to settle a strike the respondents had to pay such increased wages.

It appears that respondents submitted a claim for reimbursement for the increase in wages to the contracting officer who disallowed it, and then appealed to the Assistant Administrator of Public Works who filed a written de-

cision sustaining the contracting officer's ruling. The Administrator, in turn, rejected the claim. It is urged that the last-named official was in error as to certain of the facts, but there is no suggestion that he acted arbitrarily or in bad faith.

The petitioner's defense is grounded in certain provisions of the contract and the specifications forming a part of it, and facts found by the court below.

Article 3 provided that the contracting officer might make changes in the drawings and specifications within the general scope thereof; that an equitable adjustment as to any increase or decrease of cost due to such changes by the contracting officer or, in specified cases, his superior, should be made; and that if the contractor was dissatisfied with the decision, the dispute should "be determined as provided in article 15 hereof."

Article 15 is:

"Disputes: All labor issues arising under this contract which cannot be satisfactorily adjusted by the Contracting Officer shall be submitted to the Head of the Department. Except as otherwise specifically provided in this contract, *all other disputes* concerning questions arising under this contract shall be decided by the Contracting Officer or his duly authorized representative, subject to written appeal by the Contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto as to such questions. In the meantime the Contractor shall diligently proceed with the work as directed." (Italics supplied.)

Paragraph 4 of § 12 of Division I of the Specifications stated:

"The Government will not consider any claims for additional compensation made by the Contractor because of payment by the Contractor of any wage rate in excess of the applicable rate contained herein. All disputes in re-

gard to the payment of wages in excess of those specified herein shall be adjusted by the Contractor."

When respondents entered into the contract, their employees were unionized and were working under a wage scale fixed by agreement which was in accord with the rates fixed by the contract. This agreement did not expire by its terms until twelve days after respondents completed their work. These workmen struck because they demanded the same wages as were to be paid to workers under the superstructure contract, according to the advertisement for bids for that work. The petitioner did not participate in the negotiations between respondents and their striking workmen.

The Government's defenses were (1) that the dispute must be decided by the procedure prescribed in Article 15; that it had been so decided on the respondents' invocation of that procedure; that no showing of fraud or arbitrary action had been made, and that accordingly the administrative decision was final and the Court of Claims without jurisdiction; and (2) that, in any event, no breach of the contract on the part of the Government had been shown. These contentions were overruled by a divided court, and judgment was entered for the respondents.[1]

1. The respondents' contention is that if Article 15 be construed to cover such a dispute it is void as an attempt to oust the jurisdiction of the Court of Claims to decide a pure matter of law, namely, whether on the facts found, the petitioner had broken the contract. A majority of the judges so held, and also thought Article 15 was not intended to cover such a dispute but only one as to changes, interpretation of the specifications and similar matters usually remitted to the judgment of an architect.

The parties devoted much of their argument here to the question whether only questions of fact or questions of

---

[1] 101 Ct. Cls. 748; 60 F. Supp. 771.

mixed law and fact can by contract be made subject to final determination by an administrative officer of the Government, or whether a question of law may also, by contract, be made subject to final determination by such an officer. Our cases have not explicitly drawn any distinction between the two categories.[2] We find it unnecessary to decide the question, for we think it clear that the respondents may not recover for the increased wages in the circumstances of this case.

2. Two of the three judges in the majority below were of the view that the Government had in fact established higher wages for the respondents' work and was accordingly liable to pay the increased cost under Article 19 of the contract. All three judges in the majority held that, in any case, the Government is liable because what it did amounted to a breach of its implied obligation not to render performance more costly to the respondents.

Clearly the petitioner did not expressly avail itself of the option to set higher wage rates for the work covered by the respondents' contract. In the light of the quoted portions of the contract and specifications, it cannot be maintained that a recovery is justified pursuant to the covenants of the contract.

As an alternative ground of decision, some of the judges below resorted to the principle that it is an implied condition of every contract that neither party will hinder the other in his discharge of the obligations imposed upon him, nor increase his cost of performance. They held that, by inviting bids for the superstructure at minimum wages

---

[2] See *Kihlberg* v. *United States*, 97 U. S. 398; *Sweeney* v. *United States*, 109 U. S. 618; *United States* v. *Gleason*, 175 U. S. 588; *Plumley* v. *United States*, 226 U. S. 545; *Merrill-Ruckgaber Co.* v. *United States*, 241 U. S..387; *United States* v. *Mason & Hanger Co.*, 260 U. S. 323; *Goltra* v. *Weeks*, 271 U. S. 536; *United States* v. *John McShain, Inc.*, 308 U. S. 512; *United States* v. *Callahan Walker Co.*, 317 U. S. 56; *United States* v. *Blair*, 321 U. S. 730.

higher than those fixed in the respondents' contract for the foundations, the petitioner breached this implied condition. But, of course, this can be true only if the Government caused the increase in wages. And the findings, in our judgment, render a conclusion to that effect impossible. The Government did not stipulate that the two groups, those employed on the foundations and those employed on the superstructure, should work at the same time at different wages. On the contrary, it had every reason to suppose that the former would finish their work at the then agreed rate before the latter came on the work. And this is what happened. There is no finding that petitioner's officers or agents had reason to expect that the fixing of a wage rate under another contract for a separate portion of the work, which was to be commenced after completion of respondents' contract, would cause a breach of their existing wage agreement by respondents' employees. Moreover, it is found that the petitioner took no part in the wage controversy between the respondents and their employees. It follows that there is no basis for a holding that the Government knowingly hindered respondents in the performance of the contract or culpably increased their costs.

There are other items going to make up the amount of the judgment entered by the Court of Claims which are not attacked. As to the item of $3,751.83 increased wage costs, the judgment must be reversed; in other respects it is affirmed. The cause will be remanded for further proceedings in conformity to this opinion.

MR. JUSTICE DOUGLAS concurs in the result.