JOHN H. MATHIS CO. v. UNITED STATES.

Civ. A. No. 10149.

United States District Court
D. New Jersey.

Sept. 3, 1948.

Norcross and Farr, of Camden, N. J., and Thomas M. Farr, of Camden, N. J., for plaintiff.

Isaiah Matlack, U. S. Atty., of Newark, N. J., and Grover C. Richman, Jr., Asst. U. S. Atty., of Camden, N. J., for defendant.

MADDEN, District Judge.

This is a suit brought by plaintiff, John H. Mathis Company, a corporation of New Jersey, operating a shipyard at Camden, New Jersey, against the United States, under Title 28 U.S.C.A. § 1346, and was tried by the court without a jury. The amount involved ($7521.61) is under $10,000 and the court has jurisdiction of the subject matter.

The suit was brought upon two contracts entered into between the plaintiff and the

704

United States, through the Navy Department. The first contract dated March 14, 1942, numbered NXS–1114 for the construction by the plaintiff of three minesweepers and the second contract dated June 14, 1942, numbered NObs–220, was for the construction by the plaintiff of five self-propelled gasoline barges and two self-propelled water barges. The compensation in both contracts to plaintiff was to be on a cost-plus-a-fixed-fee basis. The contracts were completed by plaintiff and the vessels involved delivered to the Navy. The dispute arises with respect to three separate and distinct items but applicable against the two contracts equally. They are as follows: (1) The refusal by the government to allow a credit to plaintiff for certain legal fees as part of overhead costs; (2) The refusal by the government to allow a credit to plaintiff for certain charitable contributions as part of overhead costs; and (3) The insistence on the part of the government that it receive credit for income received by the plaintiff from commissions upon candy and refreshment vending machines installed by the Canteen Company in plaintiff's yard.

The disputes are assessed against each contract in proper proportion for the expense in relation to the amount of the contract so that these problems will be dealt with generally and not in relation to each contract separately.

The contracts are naturally lengthy and will not be set forth here. The pertinent parts are as follows:

Contract No. 1114, in relation to disputes, provides:

"Page 8 (supplement) Article 23. Disputes and Claims. Except as otherwise specifically provided in the contract, if any doubts or disputes arise concerning any question under the contract or as to anything in the plans or specifications, or if any discrepancy appears between said plans or specifications and the contract, the matter shall be referred at once to the Chief of the Bureau of Ships for determination; and his decision in the premises (made after a hearing, if desired by the Contractor) shall be conclusive and binding upon the parties hereto, subject, however, to review by the Secretary of the Navy at the Contractor's request made in writing within 30 days after rendition of such decision. No claim arising under the contract will be considered unless submitted in writing to the Chief of the Bureau of Ships within six (6) months from the date of final acceptance of the vessel with respect to which the claim arose."

Contract NObs–220, in relation to disputes, provides:

"Page 6 (supplement) Article 17. Disputes.—All disputes arising under the contract and not resolved as otherwise specifically provided herein shall be determined by the Secretary of the Navy, such determination to be final and conclusive as to all questions of fact involved therein."

Compensation for Contract 1114 and the method of determining costs was fixed in said contract as follows:

"Page 6, Article 11, paragraph (c)—For the purpose of determining the amount payable under the contract, costs will be determined by the Bureau of Supplies and Accounts in accordance with the procedure in Treasury Department Regulations T.D. 5000 insofar as applicable, and insofar as not applicable, in accordance with sound accounting practice."

Compensation for Contract NObs–220 and the method of determining costs was fixed in said contract as follows:

"Page 2, Article 9, paragraph (b)—Allowable cost shall constitute the cost incurred by the Contractor in the performance of the contract and accepted by the Bureau of Supplies and Accounts as chargeable in accordance with 'Explanation of Principles for Determination of Costs Under Government Contracts, War Department-Navy Department' printed by the United States Government Printing Office, April 1942, provided that paragraphs 9 and 44 thereof shall be modified to require the deduction of all cash discounts (without excepting one percent (1%) cash discounts)"

The pertinent parts of "Treasury Decision No. 5000", referred to in Contract 1114 and thereby incorporated therein, are as follows:

"Treasury Decision No. 5000—Page 8, Section 26.9, paragraph (a)—General Rule.

—The cost of performing a particular contract or subcontract shall be the sum of (1) the direct costs, including therein expenditures for materials, direct labor and direct expenses, incurred by the contracting party in performing the contract or subcontract; and (2) the proper proportion of any indirect costs (including therein a reasonable proportion of management expenses) incident to and necessary for the performance of the contract or subcontract.

"Page 10, Section 26.9, paragraph (g)—Expenses of distribution, servicing and administration.—Expenses of distribution, servicing and administration, which are treated in this section as a part of general expenses in determining the cost of performing a contract or subcontract (see paragraph (b) of this section), comprehend the expenses incident to and necessary for the performance of the contract or subcontract, which are incurred in connection with the distribution and general servicing of the contracting party's products and the general administration of the business, such as * * *.

"(4) Other expenses.—Miscellaneous office and administrative expenses, such as stationery and office supplies; postage; repair and depreciation of office equipment; contributions to local charitable or community organizations to the extent constituting ordinary and necessary business expenses; employees' welfare expenses; premiums and dues on compensation insurance; employers' payments to unemployment, old age and social security Federal and State funds not including payments deducted from or chargeable to employees or officers; pensions and retirement payments to administrative office employees and accident compensation of office employees * * *."

The pertinent parts of "Explanation of Principles for Determination of Costs Under Government Contracts—War Department—Navy Department" referred to in Contract NObs 220 and thereby incorporated therein are as follows:

"Page 10, Section 39. Administration and Distribution Expenses. This title comprehends all expenses other than those included under 'Manufacturing costs' and 'Other contract performance costs.' These other expenses are incurred in connection with the general administration of the contractor's business and the distribution of the contractor's products, a ratable part of which, by reference to all the pertinent facts and circumstances, may reasonably be held to constitute proper items of cost incident to and necessary for the performance of the contract. As to what may constitute a proper ratable part, the comments in the ensuing pages should be taken into consideration.

"Page 10, Section 40—Administration and general corporate expenses. The expenses here contemplated are those related to the general management of the business and, subject to the limitations elsewhere herein described and to the appropriateness of the apportionment used, comprise items of the following nature: (e) Professional fees and expenses for legal, accounting, and other consulting services. (f) Contributions to local charitable or community and similar organizations to the extent constituting ordinary and necessary business expenses."

It was proven by the evidence that the Cost Inspection Service of the Bureau of Supplies and Accounts, a Bureau of the Navy Department, through its local Cost Inspector, currently audited the plaintiff's costs as the work progressed. The amounts found by him to be allowable were set forth in vouchers which were then presented to and paid by the Navy Disbursing Officer in Washington. During the course of such audits the Cost Inspector allowed, and included in approved vouchers, all of the items for legal fees and contributions involved in this suit and did not deduct any amounts for the plaintiff's receipts from the Canteen Company. These vouchers were paid to plaintiff by the Navy Disbursing Officer and his accounts were afterwards submitted in the ordinary course of inter-departmental government business to the Comptroller General. The Comptroller General took exception to the items in suit and refused to allow them as between the Navy Disbursing Officer and the Treasury Department. After protesting such disallowance and receiving an unfavorable reply from the Comptroller General, the Dis-

bursing Officer deducted the amount in suit, namely, $7,251.61 from the final voucher of the plaintiff which was paid October 3, 1946. Thereafter, in accordance with the terms of the contract, the plaintiff wrote to the Chief of the Bureau of Ships (see that portion of the contracts entitled "Disputes," supra) on December 6, 1946, protesting the withholding of the money from its final payment and requested his decision concerning the disputed matters. The contents of this letter (Exhibit P. 3) are as follows:

"Reference is made to Navy contracts numbers NObs 220 and NXS 1114 formerly NOS 1114A.

"On the final payment voucher covering the above numbered contracts there was withheld payment totalling $7,251.61 pursuant to exceptions of the General Accounting Office. Reference is made to the said voucher for allocation of the total amount between the two contracts.

"The above amount represented payments under the subject contracts made by the contractor for legal fees, contributions to charities and also a disallowed credit for miscellaneous income. These items may be particularized as follows:

"Legal Fees

"Services performed by attorneys for which legal retainer fees were paid include among other things: (a) Services in connection with the drawing up of labor contracts with the union. (b) Services for frequent consultation regarding the interpretations of various clauses in the union contract and claims made by the union thereunder. (c) Services for defense in court action of a case brought by an employee discharged in accordance with the union agreement in which the contractor and the union were co-defendants. (d) Services in connection with salary and wage stabilization laws. (e) Services for employment contracts made with supervisors and other officials who were employed during the period of yard expansion for the purpose of expediting the war effort. (f) Attendance and advice at all Board of Director's meetings. (g) Services in connection with the formulating of approximately ten or twelve contracts with subcontractors for the purpose of expediting

the war effort. (h) Advice in connection with numerous wartime regulations including the G. I. Bill of Rights. (i) Services for leases negotiated for additional warehouses and other buildings during the war period.

"The retainer fees allowed did not cover work done on financial management and reorganization of the Company or for the procurement of government contracts. Fees paid for work on reorganization of the company, etc. were billed separately and were disallowed by the Navy Department in their entirety. The services above enumerated were ordinary and necessary legal fees required from time to time in connection with the work done under the subject contracts.

"Contributions to Charities

"Article 13, paragraph (i) of the contract states that costs shall be determined in accordance with section 26.9 of TD 5000. Paragraph (g)(4) of section 26.9 states that allowable miscellaneous and administrative expenses include (among others):— 'contributions to local charitable or community organizations to the extent constituting ordinary and necessary business expenses.'

"Expense ruling E-11 of the Revised Cost Inspection Manual of the Bureau of Supplies and Accounts states that voluntary payments to community chests, etc. for which no services are received are not allowable on and after 1 October 1944. Rulings of the Cost Inspection Service prior to the issuance of the above-mentioned ruling indicated that such expenses were allowable as ordinary and necessary business expenses where they were reasonable and in line with previous years' policies. No contributions were reimbursed to the contractor subsequent to 1 October 1944.

"These expenditures made by the contractor were reasonable, in line with those of previous years, were allowable by contractual agreement, and were in accordance with expense rulings formulated by the Navy Department.

"Credits for Miscellaneous Income

"Generally speaking, credits for miscellaneous income were included in the overhead apportionment made to all contracts. However, the Canteen Company of Phila-

delphia, Pennsylvania requested permission of the contractor, to install vending machines in the contractor's yard. In return for granting this right to the Canteen Company, the contractor was to receive a commission on the sales. The machines were relatively small and were placed in various locations throughout the yard. All installations and service work was performed by the Canteen Company. Periodically, the contractor received a check for commissions from the vending machine company. No verification of this miscellaneous income was made by the contractor.

"Since there was no expense to the contractor or the government in connection with this income, nor did it arise through use of the contractor's and/or the government's facilities, it is submitted that such income is attributable to extraneous operations and should therefore, not be included for purposes of overhead apportionment.

"The contractor hereby requests the Chief of the Bureau of Ships, or other proper officer, to render a decision with reference to the disputed matters set out above pursuant to the respective disputed articles of the subject contracts and the directives of the Secretary of the Navy pertaining to disputes under Navy contracts. It is the contractor's intention to avail itself of its right of appeal to the Navy Department Board of Contract Appeals, if the decision referred to above is adverse. Such decision is requested for the purpose of laying a proper foundation for such appeal. The contractor requests a hearing, if appropriate, and notice thereof should be sent to its attorney, Knox Henderson, Esquire, 1035 Land Title Building, Philadelphia, Pennsylvania."

Reply to this letter was made on December 30, 1946, by the Assistant General Counsel of the Navy (Exhibit P. 4) and the contents are as follows:

"This will acknowledge receipt of your letter of December 9, 1946 enclosing the contractor's letter of December 6 to the Chief of the Bureau of Ships and requesting an administrative denial of the subject claim as a foundation for an administrative appeal to the Navy Board of contract Appeals preceding suit in the Court of Claims.

"The amounts constituting the claim were allowed as reimbursable items of cost by the Navy Cost Inspector, to which exception was originally taken by the Comptroller General in the following amounts:

|  | NObs–220 | NXs–1114 |
| --- | --- | --- |
| 1. Legal fees | $1,985.60 | $3,667.05 |
| 2. Donations | 495.91 | 504.61 |
| 3. Credit for Misc. Income | 421.18 | 598.44 |
|  | $2,902.69 | $4,770.10 |
|  | Total | $7,672.79 |

"(The present claim for $7,251.61 apparently omits the item of $421.18 under NObs 220). It appears that the Cost Inspection Service of the Bureau of Supplies and Accounts not only reimbursed the items of cost in the first instance, but advanced reasons in justification of their allowance in reply to first and second exceptions, and that the action of the Disbursing Officer in withholding payment is not the result of adverse action by the Navy Department but solely of the Comptroller General's Decision. It is therefore believed that there is no further appropriate or necessary administrative remedy within the Department."

Upon being asked to reconsider the matter, the Assistant General Counsel again expressed the Navy's views by letter to plaintiff's counsel (Exhibit P. 5) dated February 25, 1947, which letter is set forth as follows:

"I have your letter of February 7, 1947, concerning the subject contractor. You ask whether we have had an opportunity to reconsider the view expressed in my letter to you of December 30, 1946.

"We have given further study to this matter but have found nothing which would cause us to change the views expressed in that letter."

It can be seen by this evidence that the refusal to pay the sum in dispute is not as a result of the opinion of anyone in the Navy Department, but, in fact, contrary to their expressed opinion and wishes in the matter and solely as a result of the actions of the Comptroller General. A search of the contracts, Treasury Decision No. 5000

and the Explanation of Principles, referred to in the contracts, fails to disclose mention of the Comptroller General in any way, but he is the official preventing the payments.

■■ These contracts were legally entered into and authorized by the provisions of the First War Powers Act, Title 50 U.S. C.A.Appendix, § 611, and Executive Order No. 9001, dated December 27, 1941, as amended, found in Title 50 U.S.C.A.Appendix, § 611 note. It is elementary that if the parties to a contract have the capacity to enter into an agreement they are bound by the terms thereby. Here 'the Navy entered into this contract and wants to pay a bill that in their opinion is a just and proper one. But they are stopped by the actions of another department or official who, by the terms of the contract or by the laws authorizing it, was not made a party to it in any way.

In a similar situation, in the matter of United States v. Mason & Hanger Co., 1922, 260 U.S. 323, 325, 43 S.Ct. 128, 67 L. Ed. 286, Justice McKenna, speaking for the Supreme Court, had this to say:

"Article IV of the contract provides for a monthly statement of the elements of costs upon which, if there be disagreement, the decision of the contracting officer 'shall govern.' It is further provided that 'the settlement so made and all payments made thereon shall be final and binding upon both parties hereto, except as provided in article XIV hereof.' Article XIV requires the contract to be interpreted as a whole, not by any special clause and takes care to reserve the determining decision to the officers concerned with the work, the final decision being that of the Secretary of War. Article IV, indeed, is the complement and elaboration of the provision of article II (quoted above) which provides that the contractor is to be reimbursed for such of its expenditures 'as may be approved or ratified by the contracting officer.'

"We have decided that the parties to the contract can so provide that the decision of the officer is conclusive upon the parties. Kihlberg v. United States, 97 U.S. 398, 24 L.Ed. 1106; Martinsburg & P. R. Co. v. March, 114 U.S. 549, 5 S.Ct. 1035, 29 L.Ed. 255; United States v. Gleason, 175 U.S.

588, 20 S.Ct. 228, 44 L.Ed. 284; Ripley v. United States, 223 U.S. 695, 32 S.Ct. 352, 56 L.Ed. 614. This is extending the rule between private parties to the government.

"There were such decisions, and settlement, and payments, in consequence of them, as we have seen. Over the effect of these the Comptroller of the Treasury has no power. They were the acts and duty of the officer in charge in the expression of which there was no ambiguity, and were, therefore, conclusive in effect."

The like view that both parties to a Government contract are bound by the terms thereof is found in the reading of United States v. Beuttas, 324 U.S. 768, 65 S.Ct. 1000, 89 L.Ed. 1354.

The items in controversy do not violate, in the opinion of the Navy Department, the terms or meaning of Treasury Decision No. 5000 or the Explanation of Principles for Determination of Costs Under Government Contracts.

It, therefore, seems to this court that in a case where an individual (or corporation) entered into a valid and subsisting contract with a department of the government, and such individual had completed the work in accordance with the terms thereof and had come to terms with the department that was the party to the contract as to what was just and proper compensation for its performance thereof, to then add the proviso that the individual (or corporation) must begin anew its quest for compensation with some other department or official in accordance with such new department's views or opinions upon what is or is not just and proper compensation, would be to add a provision that certainly was not within the minds of the contracting parties and which would be manifestly unfair, and for this court to condone it, equally unjust.

It is, therefore, the opinion of this court that this was not in the minds of the contracting parties herein; that it is not within the terms of the contracts in question; that the plaintiff has done all things necessary to complete the contract in accordance with the terms thereof; that the Navy Department's finding that the items in dispute are just and proper items for payment under such contracts is final, and consequently the plaintiff is entitled to judgment.