Littleton, Judge,
delivered the opinion of the court:
On December 1, 1942, the defendant, acting through the Federal Public Housing Authority, hereinafter sometimes referred to as FPHA, issued an invitation for bids accompanied by specifications and drawings, for the work required or necessary for the temporary construction of facilities, demolition, excavating and grading, site improvements, and utilities for a large War Housing Project in Washtenaw County, Michigan. The contract for this work was awarded to the plaintiff, and the contract as agreed upon by the parties was entered into on December 31, 1942. The contract was for a lump-sum consideration of $2,149,993.18, which was arrived at by the parties as a result of negotiation on the basis of unit prices for the various items and quantities of work to be performed. The work called for by the contract, including that covered by various change orders issued under the provisions of Article 3 of the contract, was substantially completed by June 15, 1944, within the period fixed by the contract, as extended by certain change orders for additional work.
*770 In this proceeding the plaintiff seeks to recover the sum of $68,180.93 made up of the following items:
(1) Costs of additional premiums on performance bond_$4,500. S3
(2) Cost of increased wages paid to laborers — “crock layers” and “bottom men” — laying sewer pipe_ 8,216. 80
(3) Cost of increased wages paid, to “mason tenders working on manholes”_ 817,91
(4) Cost of increased wages paid to “transit-mix truck drivers”_ 1,336.40
(5) 15% for overhead and profit on change orders based on Exhibit A unit prices__S3,260.49
68,130.93
1. The facts with reference to the first item of plaintiff’s claim for additional premiums for performance bond are set forth in findings 7 to 11, inclusive.
The bid form provided that if performance and payment bonds should be required the successful bidder would be required to furnish such bonds “but the cost thereof will not be included in his bid, but will be paid for by the Government.” Paragraph 8 of the instructions to bidders stated that “If the amount of the contract is in excess of $1,000,000 but not in excess of $5,000,000, the amounts of the Performance and Payment Bonds shall each be equal to forty percent (40%) of the contract price * *
Plaintiff furnished the performance and payment bonds as required by Article 24 of the contract, based upon the contract price of $2,149,993.18.
Shortly thereafter the defendant, upon being advised of the amount of the premiums for said bonds, paid the same to plaintiff, in January 1943, in the total amount of $21,499.93 under Change Order No. 1. No other or further performance or payment bond was required by defendant under the contract. The premiums paid by defendant, as above-mentioned, were the total premiums established by plaintiff’s bondsman for the performance and payment bonds required by defendant and furnished by plaintiff. Article 3 of the contract under which the bonds were furnished provided that “The contracting officer may at any time, by a written order, and without notice to the sureties, make changes in the drawings *771 and/or specifications of this contract and within the general scope thereof.” Plaintiff made no claim for additional bond premiums in any of its proposals with respect to changes made by defendant under the contract during the period of performance thereof. There is no evidence that there was any provision in either of the bonds required by defendant, and. furnished by plaintiff, that additional premiums would be due in the event change orders were issued increasing the original lump-sum contract price. Neither is there any proof that defendant expressly or impliedly agreed to pay any sum for.bond premium in excess of the premiums which it has already paid on the bonds furnished by plaintiff at the time the contract was executed.
On September 23,1944, some three months after the work had been substantially completed, plaintiff submitted a claim for $4,500.33 to the contracting officer and asked reimbursement of this amount as additional bond premiums due as a ¡result of change order increases in the original contract price. This claim was denied by the contracting officer October 2, 1944, and no appeal was taken from this decision to the head of the department within the time required by Article 15 of the contract.
Upon final payment under the contract, plaintiff executed its final certificate and release to the Government on November 2, 1944, as required by Article 16 (a), and this item of claim for additional bond premiums was not included among the items excepted or reserved by plaintiff from the operation of this release of claims.
On the facts and under the terms of the contract, we think it is clear that plaintiff is not entitled to recover on this item. The plaintiff did not except this item of claim for further prosecution under the release of claims required by the Government and executed by plaintiff under Article 16 (d) of the contract. Moreover, it is admitted that the Government reimbursed the plaintiff for the total premiums due on the bonds given, and no additional security was required by the Government under Article ,20 of the contract or on account of the increased work or costs under change orders. The Govermnent agreed to pay only the bond premiums due on the amount of the bonds required, and the total amount, of such *772 premiums has been paid. Plaintiff is not entitled to recover on this item of its claim.
2. The next three items of plaintiff’s claim are substantially the same, and are for alleged increased wages paid (1) to laborers known as “crock layers” and “bottom men” engaged on the work of laying sewer pipes; (2) to “mason tenders working on manholes”; and (3) to “transit-mix truck drivers.”
The facts pertinent to these items of the claim are set forth in findings 12 to 31, and the provisions of Article 17 of the contract and of the Special Conditions of the specifications upon which the plaintiff relies, are set forth in findings 3 and 4. On the facts as shown by the record and under the terms of the contract and specifications, we are of the opinion that the plaintiff is not entitled to recover on any of these items.
Under the terms of Article 17 (a) of the contract and under the terms of the “General Conditions” and the “Special Conditions” of the specifications, the Secretary of Labor established certain classifications for skilled and unskilled labor and specified the minimum wage rates which the contractor would be required to pay for labor used in the performance of the work and falling within the labor classifications so indicated. The contractor was required by the contract to pay not less than the hourly wage rate set opposite the trade or occupation shown, “regardless of any contractual relationship which may be alleged to exist between the contractor or subcontractor and such laborers and mechanics,” and paragraph 39 (d) of the General Conditions of the specifications stated that “The Specified wage rates are minimum rates only, and the Government will not consider any claims for additional compensation made by the Contractor because of payment by the Contractor of any wage rate in excess of the applicable rate contained herein. All disputes in regard to the payment of wages in excess of those specified herein shall be adjusted by the Contractor.”
Under the terms of Executive Order 9250 and the rules and regulations of the National War Labor Board, the rates of wages specified by the Secretary of Labor for the classifications set out were also maximum wage rates which could *773 be paid by the contractor (¶ 6 (d), Special Conditions) unless such, rates should be changed by the National War Labor Board or the Wage Adjustment Board.
Paragraph 6 (b) of the Special Conditions of the specifications relating to the labor classifications and the wage rates set forth in the specifications, expressly provided that any laborer or mechanic not covered by any of the classifications set out in the specifications “shall be paid not less than the minimum rate of wages specified herein for the classification which most nearly corresponds to the work to be performed by him,” and that “In the event any dispute on that question [classification and wage rate] cannot be adjusted by the Contracting Officer, the question and the information, together with the Contracting Officer’s recommendations thereon, shall be referred for determination to the Secretary of Labor whose decision on the question shall be conclusive on the parties to the Contract with the same effect as if the work performed by such laborer or mechanic had been classified and the minimum rate specified herein.”
The facts show that the labor classifications and wage rates, with respect to which the plaintiff now makes claim, were not originally established and set forth in the contract. During the performance of the work the business agent of the Common Laborers’ Union visited the project, and notified plaintiff that the prevailing wage rates in that area for “crock layers” and “bottom men,” engaged on the work of installing sewer pipes, were $1.10 and $1.25 per hour, respectively, and further advised plaintiff that this work could not be done with ordinary common laborers at 90 cents per hour. This agent of the Union also advised plaintiff that the prevailing wage rate for mason tenders assisting bricklayers working on manholes was $1.00 per hour. Likewise, the business agent of the Teamsters’ Local Union No. 247, advised plaintiff that the prevailing hourly wage rate for truck drivers engaged to drive transit-mix concrete trucks was $1.15 per hour. Plaintiff was further advised that the men performing the work mentioned would not be allowed to perform such work unless the plaintiff paid the hourly wage rates demanded for the men working in these classifications.
*774 Plaintiff submitted these matters to the contracting officer and stated, “We are requesting from you the proper classification and wage rates * * *, also we are requesting payment for the increase in wages.” After investigation, the contracting officer submitted the matter together with a statement of the facts to the Labor Eelations Division of the Federal Public Housing Authority, and the Labor Eelations Division, pursuant to authority delegated by the Secretary of Labor, approved and established additional labor classifications for the three classes of workmen mentioned, and the prevailing wage rates as indicated by the Union therefor.
From these facts, we think it is clear that the Government did not change the labor classifications or increase the wage rates originally established by the contract. It merely approved additional labor classifications established and existing in the area where the work was being performed and authorized the payment of the prevailing rates of wages in such area, for work falling within such'additional classifications. Under the provisions of the contract this determination and approval was conclusive on the parties to the contract, with the .same effect as if such classifications and minimum rates had been orginally established by the contract. There was no provision in the contract that the Government would reimburse the contractor for increased wages paid under circumstances such as are presented by the facts in this case. Had plaintiff investigated the conditions relating to labor in the area in which the work was to be performed, as it was required to do by an express provision in the bid form upon which it submitted its bid, it would have found that the additional labor classifications and wage rates which the contracting officer subsequently authorized plaintiff to use, prevailed in such area at the time plaintiff submitted its bid.
Since the payment by plaintiff of the increased wage rates involved was not caused by any order or directive of the defendant, we are of the opinion that plaintiff is not entitled to recover the amount of the increased wages paid to the workmen mentioned, in excess of the wage rates originally set forth in the contract for common laborers and certain truck drivers. United States v. Beuttas, 324 U. S. 768.
*775 3. The last item of plaintiff’s claim is for $58,260.49, representing an additional 15 per cent alleged to be due for overhead and profit on the whole or a portion of the amount included in each of 18 change orders, totaling $355,069.97, as set forth in finding 37. This claim is based upon Paragraph 12 (e) (j) of the General Conditions of the specifica tions attached to and made a part of the contract.
Paragraph 12 of the General Conditions, entitled “Changes in Work”, was attached to the invitation for bids and required that plaintiff sübmit a schedule of unit prices to be included as a part of the contract and used, where applicable, in computing the amounts to be added to or deducted from the lump-sum contract price for changes in the work, under Articles 3 and 4 of the contract. Forty-eight change orders were issued, practically all of which increased the contract price.
The plaintiff prepared and submitted the required schedule of unit prices which was accepted by defendant, and such schedule, together with the unit prices bid therein, was incorporated in the contract as a part of Article 26, which provided as follows:
26. Unit Price for Changes. — In the event of any changes in the work specified in this contract the unit price set forth in “Exhibit A” to this contract shall be used in computing both charges and credits therefor. Such unit prices have been approved by the contractor and the Government for the purpose of computing charges and credits for changes, and with the express understanding that such unit prices shall be used in computing both additive and deductive changes.
In addition to the above provision of the contract, certain provisions in Paragraph 12, General Conditions, of the specifications, quoted in finding 33, which were made a part of the contract by Article 1, gave the contracting officer authority to use a lump-sum method or a cost-plus method in fixing the value of a change in the work. These provisions relating to the lump-sum and cost-plus methods were obviously intended to apply only where the classifications of work and unit prices, set forth in the schedule referred to as “Exhibit A”, would not properly cover the whole or some part of the work involved in a change. The contracting *776 officer used the lump-sum or tlie cost-plus method in some instances not here involved.
Paragraph 12, sufra, provided that the amount to be paid under any of the three methods for the cost of the change in the work (unit price, or lump-sum, or cost-plus) should include an amount for “the contractor’s overhead and profit.” Paragraph 12 (b) (3) provided that the percentage allowance on net cost for the contractor’s overhead and profit should not exceed 15 percent.
Subparagraph (j) of paragraph 12 of the General Conditions, which appeared under the heading “Rules for Measurement,” immediately following a schedule in the original specifications of 19 items (under ¶12 (e)) for unit prices to be agreed upon for changes in the work, provided as follows:
(j) The unit prices to be quoted are to include all items of labor and materials, the use of power tools and equipment, power and all items of cost such as public liability and workmen’s compensation insurance, and pro rata charges for foremen. The gross amount of the extra shall be determined by adding to the price adjustment as determined by the application of Unit Prices, the percentage amounts for the Contractor allowed under the General Conditions of the Specifications, under the heading of “Changes in the Work” except, that the cost of Social Security, Old Age and Unemployment Insurance may be added, but without any percentage allowances thereon for overhead and profit. Among the items considered as overhead are insurance other than mentioned above, bond or bonds, superintendent, timekeepers, clerks, watchmen, use of small tools, other incidental job burdens and general office expenses.
The schedule of items above-mentioned, as it appeared in the original specifications, was not used by the parties, but the schedule of work and materials and the unit prices therefor negotiated and agreed upon by the plaintiff and the Government in arriving at the total lump-sum price for the original work called for by the contract, were adopted and agreed upon as “Exhibit A” unit prices for changes and were incorporated in the contract under Article 26.
The defendant has shown, and the plaintiff admits, that the stipulated “Exhibit A” unit prices agreed upon included *777 amounts for overhead expense and profit, but plaintiff argues that subparagraph (j), supra, required the Government to add to the “Exhibit A” unit prices for changes an additional 15 per cent for overhead and profit, because the unit cost for work under change orders was greater than the unit cost of original work called for by the contract. We cannot agree with this contention. Paragraph (j) was, in our opinion, included as a part of paragraph 12, for the purpose of setting forth the items of costs and expenses which “the unit prices to be quoted” for the cost of changes in the work should include, one of such items of expense being 15 percent for overhead and profit mentioned under Paragraph 12 .(b) (3) of the General Conditions. After the unit prices for changes had been agreed upon and inserted in Article 26, paragraph (j) no longer entered into the matter of the determination of cost of changes. We think it is clear from the evidence and the terms and conditions of the contract that neither party intended at the time the contract was negotiated and executed that plaintiff would be allowed an additional 15 percent for overhead and profit on the Exhibit A unit prices for changes. . .■ • •
The proof shows that the amount allowed and paid under each of the 18 change orders, oh which plaintiff here asks an allowance of an additional 15 per cent, was approved by the contracting officer in the exact amount proposed by plaintiff for the additional work at the contract Exhibit A unit prices agreed upon for changes. Such amounts were accepted by plaintiff without protest. Each change order as accepted by plaintiff and approved by the contracting officer, contained the provision that “All claims against the United States of America which are incidental to or as a consequence of the afore-mentioned change are satisfied.”
The last Change Order No. 48 was accepted and approved September 22,1944, after all work under the contract had been substantially completed in June 1944. Thereafter, the plaintiff, for the first time, made a written claim to the contracting officer for $53,260.49 for “contractor’s 15 % to be added to Unit Price changes.”
This claim was denied by the contracting officer. No appeal was taken from this decision to the head of the depart *778 ment within the time specified in Article 15 of the contract. Plaintiff submitted this claim to the Federal Public Housing Authority in Washington, on January 23, 1947, and it was denied, because no appeal had been taken on the claim within the time limit stipulated in the contract.
Neither the contracting officer nor anyone having authority to act for him authorized plaintiff to postpone making written protests or claims, with respect to amounts due under change orders, until after all work had been completed and all change orders had been issued.
The plaintiff is not entitled to recover on any of the items of the claim sued upon, and its petition is, therefore, dismissed. It is so ordered.
Howell, Judge; MaddeN, Judge; Whitaker, Judge; and JoNES, Chief Judge, concur.