42ND STREET FOTOSHOP, Inc., Plaintiff,

v.

UNITED STATES of America, Defendant.

United States District Court
S. D. New York.
Dec. 28, 1955.

---

**3.** 132 F.Supp. 504, 506–507.

Olcott, Roth & Reinhart, New York City, Norman Roth, New York City, of counsel, for plaintiff.

Paul W. Williams, U. S. Atty., New York City, George M. Vetter, Jr., Asst. U. S. Atty., New York City, of counsel, for defendant.

WEINFELD, District Judge.

This suit arises under a written contract whereby plaintiff undertook to manufacture and deliver to the Department of the Army 2,500 color slides for the agreed price of $2,375. The slides, 50 sets of 50 each, reproductions of original American water color paintings, were intended for distribution to overseas Information Centers by the Reorientation Branch of the Army. The slides were to be 3¼″ x 4″ reproductions, not of the original paintings, but of other reproductions, 2″ x 2″ slides.

The contract was awarded to plaintiff on December 14, 1949, as the lowest competitive bidder. Prior to the award plaintiff had submitted sample slides which were found satisfactory. Delivery of the slides was to be made within 42 days to the Reorientation Branch Field Office, with a penalty of $20 for each day's delay in delivery. Under the contract, the Government was given a right of inspection during manufacture and after delivery, with the further right to reject articles not in conformity with the specifications or to require their correction. Final inspection was conclusive.

On February 1, 1950, plaintiff made delivery of the 2,500 slides under the following circumstances. Several days previous Sam Marcus, president of the plaintiff, in response to a request from John A. Martin, the Government representative in charge of the project, presented for inspection by the latter a single set of 50 slides. Marcus at the same time advised Martin that the entire contracted order had been completed. Martin, who disavowed experience in the reproduction field, examined the set of 50 slides and expressed the view that some of them were defective in various respects. He further stated that before the entire order could be accepted it would be necessary to submit samples

to an expert for an opinion as to whether they were faithful reproductions, particularly as to the color fidelity, of the 2″ x 2″ slides. Marcus acquiesced in this suggestion, but plaintiff delivered, as noted above, the 2,500 slides on February 1st, since they had already been completed. This was three days after the maximum delivery date and plaintiff was already chargeable under the penalty clause for the three days' delay; continued non-delivery would have meant additional penalties for each day's delay.

Plaintiff sent an invoice for the purchase price on February 20, 1950 and a follow up statement on June 1st, but heard nothing about the matter until July 25th when one of its representatives telephoned to Martin requesting payment, and then for the first time was advised by the latter that the slides had been rejected. On the same day plaintiff wrote to the contracting officer contending that the delivery had been made on the basis of Martin's prior approval, that it had never received notice of rejection and asking that the matter be looked into. In response, a formal rejection was sent on August 9th. The ground of rejection was that the slides were not "equal to the sample which you originally submitted for approval". Attached to the letter of August 9th was an inter-office communication from the Reorientation Branch to the Chief of the Purchasing Branch of the Army to the effect that on May 24, 1950, the art expert to whom the matter had been submitted found approximately half of the reproductions unsatisfactory for various stated reasons. Thus the Government had notice of the alleged deficiencies on May 24th but did not reject until August 9th.

■■ The issue presented is whether the defendant accepted the 2,500 slides by failing to exercise its right of rejection within a reasonable time after their delivery. The applicable principles of law are the same whether the contracting parties are individuals or governmental agencies.[1] When the Government enters upon an ordinary commercial transaction it is bound by the same rules of law and fair play as those which obtain between private parties.[2] The defendant, of course, was entitled to reasonable opportunity after delivery of the slides to make an inspection to determine whether they conformed to contract requirements,[3] and in the event it decided to reject was required to give notice within a reasonable time.[4]

■ In the instant case the period, from which it must be determined whether the defendant retained the merchandise an unreasonable period of time after inspection, commenced when it may be said that it already had a reasonable and sufficient opportunity to procure the judgment of the expert upon whom it relied.[5] And in this connection it is observed that the subject matter of the contract was not a fine work of art or a rare object, but ordinary color reproductions of paintings.[6] Although the 2,500 slides were delivered to the defendant on February 1, 1950, a sampling was not submitted to its expert until some time in April. Apparently the expert did not render his adverse opinion to the defendant until May 24th. But the defendant took no immediate action and

1. Reading Steel Casting Co. v. United States, 268 U.S. 186, 45 S.Ct. 469, 69 L.Ed. 907; Hollerbach v. United States, 233 U.S. 165, 171–172, 34 S.Ct. 553, 58 L.Ed. 898.

2. Cf. De La Rama Steamship Co., Inc., v. United States, 344 U.S. 386, 389, 73 S.Ct. 381, 97 L.Ed. 422.

3. Uniform Sales Act, § 47.

4. Reading Steel Casting Co. v. United States, 268 U.S. 186, 45 S.Ct. 469, 69 L.Ed. 907; Uniform Sales Act, § 48.

5. Cf. Dailey Mills, Inc., v. State, 200 Misc. 811, 104 N.Y.S.2d 31.

6. It is also noted that defendant, before awarding the contract to plaintiff, had no difficulty in securing within a month an art expert's opinion of the samples of reproductions originally submitted by plaintiff.

failed to notify plaintiff of its decision to reject the slides until August 9th. Indeed, it appears that the contracting officer was galvanized into making his decision to reject and to send the rejection notice by plaintiff's demand for payment made on July 25th.

Under all the circumstances, I hold that the defendant failed to examine or cause to be examined by its expert the slides within a reasonable time after their delivery on February 1st, and further that after it had the benefit of the judgment of its specially designated expert it failed to notify the plaintiff within a reasonable time of its decision to reject the slides, and by reason thereof must be deemed to have accepted the merchandise. The total lapsed period from initial delivery on February 1st, through inspection by the expert, to final rejection on August 9th was more than six months which, considering all relevant factors including the subject matter of the sale, exceeded any reasonable time within which to reject and to give notice.[7] The fact that interoffice correspondence, which had attached to it the art expert's opinion dated May 24th, shuttled back and forth between different departments of the defendant

did not constitute notice of rejection to the plaintiff.

■ The disputes clause of the contract does not require a different result.[8] The contracting officer's power under that clause to reject the merchandise or to make other decisions as to performance or non-performance or other issues arising under the contract is not questioned. But once the decision to reject was made, whether notice of it was seasonably given to a contractor is not a dispute concerning a "question of fact which may arise under this contract".[9]

The ruling herein makes it unnecessary to pass upon the defendant's contention that plaintiff may not maintain this action because of its failure to prosecute an administrative appeal as prescribed in the disputes clause.[10]

Since the Court has fully examined Exhibits A, B, C and D, they are admitted for all purposes.

The plaintiff is entitled to judgment in its favor in the sum of $2,375 less $60 for three days' delay in delivery.

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law.

7. See Frankel v. Foreman & Clark, 2 Cir., 33 F.2d 83, 86–87; Moore v. Foss & Co., D.C.D.Mass., 18 F.2d 635; Silberman v. Engel, 125 Misc. 816, 211 N.Y.S. 584; Lamport Co., Inc., v. Fisher Bookbinding Co., 277 App.Div. 870, 98 N.Y.S.2d 410.

8. "13. Disputes.—Except as otherwise specifically provided in this contract, all disputes concerning questions of fact which may arise under this contract, and which are not disposed of by mutual agreement, shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail a copy thereof to the Contractor. Within 30 days from said mailing the Contractor may appeal to the Secretary of War, whose de-

cision or that of his designated representative, representatives, or board shall be final and conclusive upon the parties hereto. Pending decision of a dispute hereunder the Contractor shall diligently proceed with the performance of this contract."

9. Cf. Cudahy Packing Co. v. United States, 75 F.Supp. 239, 245, 109 Ct.Cl. 833; also Beuttas v. United States, 60 F.Supp. 771, 101 Ct.Cl. 748, 769–770, reversed on other grounds, 324 U.S. 768, 65 S.Ct. 1000, 89 L.Ed. 1354; Halvorson v. United States, D.C.E.D.Wash., 126 F.Supp. 898, 902.

10. Cudahy Packing Co. v. United States, 75 F.Supp. 239, 245, 109 Ct.Cl. 833.