**TRIPLE "A" MACHINE SHOP, Inc.,**
**a Corporation, Appellant,**

**v.**

**UNITED STATES of America,**
**Appellee.**

**No. 14389.**

United States Court of Appeals
Ninth Circuit.

June 25, 1956.

J. Thaddeus Cline, San Francisco, Cal., for appellant.

Warren E. Burger, Asst. Atty. Gen., Marcus A. Rowden, Paul A. Sweeney, Attys., Dept. of Justice, Washington, D. C., Keith Ferguson, Special Asst. to the Atty. Gen., for appellee.

Before HEALY and BONE, Circuit Judges, and JAMES M. CARTER, District Judge.

JAMES M. CARTER, District Judge.

The case grows out of a government contract for the repair and reconditioning of five life boats. It was agreed at the trial that the reasonable value of the labor and materials for which recovery was sought, was $6040.00. The question is whether the labor and materials were supplied as part of the contract price, or whether they were extras for which recovery may be had.

A master contract was entered into on February 10, 1950, between the United States, acting through the Military Sea Transport Service, Pacific (hereafter Sea Transport), the Triple "A" Machine Shop, Inc., libelant below and other contractors. This contract did not provide for the work in question but for the so-

licitation by Sea Transport of bids for work and services, and upon acceptance, the performing of the work under job orders issued by the contracting officer.

About September 20, 1950, Specification M.S.T.S.P. No. 51–64 was issued by Sea Transport for work on five life boats and on September 21, 1950, by Invitation to Bid No. P 51–36, Sea Transport solicited bids from parties to the master contract. The Invitation to Bid advised bidders of the location of the life boats and their availability for inspection, and that the specification which accompanied the invitation would become part of the job order upon issuance thereof.

The specifications provided, "It is the intent of these specifications to provide for the complete repair and reconditioning, both mechanically and structurally, of five (5) life boats, all as necessary to place the boats in first class operating condition and ready for use. The work shall include, but shall not be limited to, any detailed specifications which follow."

The specifications, in addition to the general clause above quoted, contained a listing of only "Category A" items.[1] No category B or C appeared. However, in the specifications was the clause, "Replacements of deteriorated tanks shall be accomplished only on a written field order." This, all parties agree, referred to extra work and in fact a change order was later issued and Triple "A" was paid an additional $9,490 for this work. This item is not in dispute.

To continue with the chain of events, Triple "A" on September 29, 1950, made its bid, apparently on a legal form supplied with the Invitation to Bid. The substance of the bid follows:

"The undersigned Triple 'A' * * * offers and agrees if this bid be accepted * * * to accept a Job order issued under a master contract from M.S.T.S.—19 (1–50) *and to furnish any and all the items of supplies or services described on the reverse side of this bid at the price set opposite each item * * *"* [Emphasis supplied]

The reverse side contained
"Category A Items"
"Repairs to five (5) life boats"
"Category B Items"

| "Item No. | Price | Item No. | Price |
| --- | --- | --- | --- |
| | $ | | $ ——" |
| | $ | | $ |

Under the Category A section, Triple "A" placed its bid of $3775.00 as total price.

On October 2, 1950, Sea Transport issued its Job order No. 10 which provided in part:

"1. Work: The contractor shall furnish the supplies and service required to perform the work described in the attached plans and specifications made a part hereof and designated as follows: Repairs to five (5) life boats, specification No. M.S.T.S.P. 51–64."[2]

"2. Price........$3,775.00." Below appears "Accepted. Date: October 11, 1950. Triple 'A' Machine Shop, Inc. (contractor) by /s/ A. Engel, Pres."

Triple "A" commenced its work under the contract and thereafter an inspector from Sea Transport determined that certain work was necessary to make the boats seaworthy. On October 16, 1950, Triple "A" was directed to furnish certain materials and labor to accomplish the repair and reconditioning of the boats

1. Triple "A" offered testimony that it is customary in connection with this type of contract for the specifications to list in "Category A" all matters to come within the contract price and to list as "Category B" and "Category C" items

which would be extras and for which additional compensation would be paid.

2. These were the same specifications we have formerly referred to and quoted from.

and was advised that the Contracting Officer considered the above work to be fully covered in the specifications No. M.S.T.S.P. 51–64, and that no additional payment would be made for the work. This work was described as "renewing all bands for securing tanks; renew 12 shell plates and 1 shell doubler chafing plate; renew two sockets for propelling units; renew inboard margin boards on 4 life boats; renew all floors in 4 life boats; renew 2 thwarts."

The major portion of this work, in dollar terms, involved the shell plates, approximately 298 sq. ft. for which in the libel filed there was originally claimed $3600 and the renewing of the floors in 4 life boats for which there was claimed $1000.

Triple "A" advised Sea Transport that it expected extra compensation for the above work, but was informally advised by the Contracting Officer that the matter was considered to be fully covered by the specifications and job order and no additional compensation would be paid. The contract provided both in Art. 5 and Art. 14, discussed hereafter, that the contractor should in any event "proceed diligently with the performance" of the work. Triple "A" proceeded with the work under written protest and with notice to the Contracting Officer it would require payment for the reasonable value of the additional work and materials.

On November 2, in response to written demand for further compensation for the work ordered, the Contracting Officer made a formal determination that the specifications and job order required Triple "A" to do the work necessary to completely repair and recondition the life boats, and that the work and materials were not extra, but were within the terms of the contract, and denied the claim for additional payment. This was communicated to Triple "A".

Triple "A" appealed the Contracting Officer's decision to the Commander M.S.T.S., Washington, D. C., the appeal being taken pursuant to both Articles 5(j) and 14 of the Master Contract.[3] The dispute was referred by the Commander M.S.T.S. to the Contract Advisory Board for decision. That Board determined that the dispute concerned a question arising out of the interpretation of plans and specifications and therefore came within Art. 5(j) of the Master Contract. The Board held that the specifications and job order fully covered all work and services required of Triple "A" and that there was accordingly no right to extra compensation.

Triple "A" then filed its libel below. Triple "A" has been paid the contract price of $3775.00 and the $9490.00 provided for in change order No. 1. It claims $6040.00 additional as extras. The United States contends this work and labor was within the contract price. The case was tried on the merits and decree entered in favor of the United States.

Triple "A" states in its brief, "The case raised only one question of law to be determined by the Court, namely, what constituted the contract of the parties? It is obvious that Libelant would not be entitled to judgment for the reasonable value of the above listed repairs if, under its contract, Libelant was bound to furnish said extra repairs without any additional compensation therefor."

Triple "A" argues the question of *offer and acceptance*. It contends that the Invitation to Bid was not an offer, but a request for offers, and that Triple "A"'s bid was an offer "to furnish any and all of the items of supplies or services described on the reverse side of this bid at the price set opposite each item." On the reverse side appears "Category A Items, Repairs to five (5) life boats. Total price $3775.00." Triple "A" argues this offer was accepted.

Triple "A" then argues its proof as to custom that Category B & C items are repairs for unknown or undiscovered de-

3. Triple "A" first appealed under Art. 14; was advised the dispute came under Art. 5(j) and then proceeded with its appeal under both Articles.

fects,[4] while Category A items are those definitely known. Hence, Triple "A" argues, its bid only covered known items and since it did not know of the extra items when it made its bid, therefore the contract of the parties covered only the known items.

There are several answers to these contentions.

*First* the bid was made, "subject to all the terms and conditions of the bid schedule, and instructions relating thereto", and the specifications stated expressly that the "work shall include but not be limited to, any detailed specifications which follow", and stated it was the intent of the specifications to provide for the complete repair and reconditioning, both mechanically and structurally, of five (5) life boats, all as necessary to place the boats in first class operating condition and ready for use." This alone would have been sufficient to justify the trial court in concluding that the bid covered all extra material and services necessary.

But, *secondly,* assuming that the Triple "A" bid was not an acceptance, but was tendered as an offer for only the repairs Triple "A" contends it then knew of, Triple "A"'s claim must fall. The bid, if not an acceptance, could constitute a counter offer. Baltimore & O. R. Co. v. Youngstown Boiler & Tank Co., 6 Cir., 1933, 64 F.2d 638; See Iselin v. United States, 1926, 271 U.S. 136, 139, 46 S.Ct. 458, 70 L.Ed. 872; Restatement Contracts, Sec. 60. The matter would then be wide open for further negotiations or action by the parties.

The bid was not the end of the dealings between the parties. Sea Transport next issued a job order pursuant to the Master Contract. It required Triple "A" to "furnish the supplies and services required to perform the work described in the attached plans and specifications made a part hereof * * *". This could have been considered as a further counteroffer by Sea Transport. This job order was accepted by Triple "A" in writing without modification. Sec. 2(a) of the Master Contract required the job order to be signed by the Contracting Officer and by an officer or agent of the Contractor. The job order and the acceptance could constitute offer and acceptance to perform the work according to specifications, and could have become the contract between the parties.

*Thirdly,* the trial court on the merits found the fact issues against Triple "A", including Triple "A"'s contentions and proof as to custom. The specifications broadly and specifically required all work and services necessary to repair and recondition the boats.

The findings of fact, conclusions of law and decree of the trial court rested on dual bases, (1) that the so-called extra work was included within the specifications, and (2) that the decision of the Contracting Officer, approved by the Contract Advisory Board under Art. 5(j) of the Master Contract was final and conclusive, and could not be set aside by the trial court.

The Master Contract contained two provisions, "Art. 5—Inspection and Manner of Doing Work" and "Art. 14—Disputes." Triple "A"'s administrative appeal was taken under Art. 14 and thereafter Triple "A" submitted its appeal under both articles. It was acted on only under Art. 5(j).

Art. 5(j) provided, "Any questions regarding or arising out of the interpretation of plans and specifications * * * shall be determined by the Contracting Officer subject to appeal by the Contractor to Commander, Military Sea Transportation Service * * * ". There was *no express language making such decision final.* There appears only the clause that "Pending final decision with respect to any such appeal the Contractor shall proceed diligently with the performance of the work as determined by the Contracting Officer."

Art. 14 read in part, "Any disputes concerning a question of fact or price

---

4. It should be noted that the replacement of deteriorated tanks for which Triple "A" was paid $9490.00 under change order No. 1 was not listed as a Category "B" or "C" item.

arising under this contract or under any job order or plans or specifications (other than matters to be determined by the Contracting Officer under Art. 5(j) hereof) which is not disposed of by agreement between the Contractor and the Contracting Officer shall be referred to and decided by Commander, Military Sea Transportation Service  *  *  * ". A further appeal within 30 days was allowed to the Secretary whose decision "shall be final and conclusive  *  *  * ". If such further appeal was not taken the decision of the Commander "shall be final and conclusive." [5]

The government would have us also affirm the decree below on the alternate holding of the trial court that the Contracting Officer's decision was final and that the trial court could not review it, notwithstanding there was no *express* finality clause in Art. 5(j). The government urges we find an intent as to finality from the construction of Art. 5(j), United States v. Moorman, 1950, 338 U.S. 457, 462, 70 S.Ct. 288, 94 L.Ed. 256, and that "it is not necessary that any set form of words be used to express the purpose", United States v. Hurley, 8 Cir., 1910, 182 F. 776, 779. The government relies on

three early cases, Kihlberg v. United States, 1878, 97 U.S. 398, 24 L.Ed. 1106; Sweeney v. United States, 1883, 109 U.S. 618, 3 S.Ct. 344, 27 L.Ed. 1053, and United States v. Gleason, 1900, 175 U.S. 588, 604–606, 608–609, 20 S.Ct. 228, 44 L.Ed. 284, where finality of officer's decisions were upheld, notwithstanding the absence of such words as "final", "binding", or "conclusive." [6]

We do not have to interpret the contract or decide the issue. Rightfully or wrongfully, the trial court, heard evidence, reviewed the decision of the Contracting Officer and the Contract Board, and found their determinations were correct. Triple "A", having had the benefit of this review, cannot complain. The United States, having prevailed below, cannot complain. We therefore do not decide the question and rest our decision on the trial court's findings that the specifications were part of the contract and covered the claimed extra work.

Triple "A" makes much of an obvious erroneous finding of fact, that "all items requiring repair were visible and open to inspection by the Libelant's agent," and "that all such items of repair were visible and subject to inspection and as-

---

5. The Act of May 11, 1954, 68 Stat. 81, Public Law 356, 83rd Congress, 2nd Sess., 41 U.S.C.A. §§ 321, 322, which affected finality clauses in government contracts, has no application to, or impact on this case. Public Law 356 reads, "That no provision of any contract entered into by the United States, relating to the finality or conclusiveness of any decision of the head of any department or agency or his duly authorized representative or board in a dispute involving a question arising under such contract, shall be pleaded in any suit now filed or to be filed as limiting judicial review of any such decision to cases where fraud by such official or his said representative or board is alleged: *Provided, however,* That any such decision shall be final and conclusive unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence.

"Sec. 2. No Government contract shall contain a provision making final on a question of law the decision of any administrative official, representative, or board."

It is obvious that Sec. 1 does not affect this contract, since it has not been alleged or contended that the decision was "fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith"; and the question of "substantial evidence" has been decided adversely to the Libelant by the trial court on conflicting evidence below.

Sec. 2 of the Act and legislative history demonstrates the intent of Congress to make the section applicable only to future contracts. See Report 1380 of the Committee of the Judiciary of the House of Representatives, 83rd Cong., 2nd Sess., p. 5; U.S.Code Congressional and Administrative News 1954. Vol. 2, pp. 2191, 2195.

6. The late cases deal with contracts that contained an express finality clause, United States v. Moorman, supra; United States v. Wunderlich, 1951, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113; United States v. Beuttas, 1945, 324 U.S. 768, 65 S.Ct. 1000, 89 L.Ed. 1354; Wildermuth v. United States, 7 Cir., 1952, 195 F.2d 18; Lindsay v. United States, 9 Cir., 1950, 181 F.2d 582.

certainment by Libelant's representative prior to submission of Libelant's bid." The evidence showed without dispute that the built-in buoyancy tanks, steel floors and wooden floor boards, made it impossible to ascertain the condition of the interior of the boats until the boats were dismantled. It was at this stage that the inspector for Sea Transport, required the so-called extra work from Triple "A".

We do not consider the error prejudicial. Triple "A" agreed to do all necessary work and supply all necessary material required by the specifications. The fact they could not see some of the work required, when they made their bid, is not a defense. They took a "cat in a bag." The erroneous finding does not require reversal.

We are not called upon to decide the fairness of the actions of the Contracting Officer. Common fairness might have required a change order and an additional allowance, if work and materials were required which neither Sea Transport nor Triple "A" saw when bids were issued. Proper pleadings and proper evidence might have presented a case of mutual mistake. But we cannot remake the parties' contract on the pleadings and record made below.

Decree affirmed.