**KIRCHHOF et al. v. UNITED STATES.**

No. 48842.

United States Court of Claims.

Feb. 5, 1952.

J. Roy Thompson, Jr., Washington, D. C., for plaintiffs. Bernard J. Gallagher, Washington, D. C., on the briefs.

John J. McGinty, Washington, D. C., with whom was Asst. Atty. Gen. Holmes Baldridge, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

HOWELL, Judge.

Plaintiffs sue to recover $14,593.58 on behalf of the F. J. Kirchhof Construction Company, and $7,798.58 on behalf of Kirchhof's subcontractors, representing extra-labor costs incurred in the performance of a lump-sum construction contract entered into with defendant on November 30, 1945, for the remodeling and extension of the United States Mint at Denver, Colorado. The increased costs resulted from payment by plaintiffs of wage rates to certain classifications of laborers and mechanics employed on the project which were higher than the rates specified in the contract specifications. In accordance with the Davis-Bacon Act of August 30, 1935,[1] the contract specifications contained wage rates determined by the Secretary of Labor as the prevailing rates for laborers and mechanics in the Denver, Colorado, area, and the prime contractor's bid was based in part upon the wage rates contained in the specifications. While ordinarily the wage rates specified in such a contract were only the minimum rates applicable to the project, by virtue of Executive Order 9250, 7 F.R. 7871 issued October 3, 1942, such rates could not be increased or decreased except as authorized by the Wage Adjustment Board acting under delegation of authority from the National War Labor Board.

On or about March 6, 1946, while the work on this contract was still in progress, the Wage Adjustment Board authorized the payment of rates higher than those specified in the contract in question for a number of classifications of laborers and mechanics in the Denver, Colorado, area. The decisions authorizing such increases were directed to the local labor unions representing the trades involved and authorized the increases for nonfederal construction work only. Plaintiffs, in addition to their work on the Mint project, were engaged in certain nonfederal construction work in the Denver area and were accordingly notified by the labor unions of the decisions of the Wage Adjustment Board authorizing increased rates on nonfederal work. It immediately became apparent to plaintiffs that unless the same increased wages could be paid on the Mint project, the trades receiving the increases on nonfederal work would leave the Mint project and accept employment on nonfederal jobs. Plaintiffs asked defendant for permission to pay the increased rates on the Mint project and were advised that individual applications by the various contractors would have to be made directly to

---

1. 49 Stat. 1011, as amended by the Act of June 15, 1940, 54 Stat. 399, U.S.C.A. Title 40, §§ 276a and 276a–1.

the Wage Adjustment Board for permission to pay such increased rates on the Mint project. Plaintiffs made such applications to the Wage Adjustment Board and that Board authorized the same increased wages for all future work on the Mint project for cement .finishers, sheet metal workers, iron workers, bricklayers, stone masons, carpenters, laborers, hod carriers, and operating engineers effective on various dates in April 1946. Following these authorizations by the Wage Adjustment Board, plaintiffs paid the increased rates. In connection with all additional work directed by change orders issued by defendant, the estimated costs and the amounts paid plaintiffs for such work were based upon the increased wage rates contained in the various Wage Adjustment Board authorizations to plaintiffs.

On April 2, 1946, plaintiffs wrote to defendant and asked whether or not they would be allowed reimbursement for any increased wages paid as a result of Wage Adjustment Board action. On April 24, 1946, defendant advised plaintiffs that the contract did not provide for reimbursement for increased labor rates paid by plaintiffs over the rates specified in the contract.

On October 29, 1947, plaintiffs made a written claim to defendant requesting reimbursement for the increased wages paid under the various Wage Adjustment Board authorizations of April 1946, and on December 12, 1947, W. E. Reynolds, Commissioner of Public Buildings, denied plaintiffs claim stating that the Agency was without authority under the contract to comply with the request for reimbursement.

It is plaintiffs' contention that the actions of the Wage Adjustment Board in increasing the wage rates in the Denver area under the circumstances of this case were equivalent to decisions or acts of the defendant's duly authorized agent making a change under Article 3 of the contract for which defendant was obligated to make an equitable adjustment. Plaintiffs further contend that it was an implied condition of their contract that the defendant would not hinder plaintiffs in their discharge of the contract obligations so as to increase their cost of performance;

that the action of the Wage Adjustment Board increasing the rates in the Denver area and forcing plaintiffs to pay the higher rates to keep the job going constituted a breach of that condition for which defendant should be responsible for damages in the amount of the increased costs. Plaintiffs also contend that a proper interpretation of negotiations leading up to the contract would result in making the contract, insofar as the wage provisions are concerned, a cost-plus contract.

With respect to the last contention mentioned above, plaintiffs rely upon the fact that during negotiations an attempt was made to include in the bid an item for contingencies. The Government's officer in charge of negotiations refused to permit such an item to be included and the contract was signed without such an item. We see nothing in these circumstances which indicates that the parties thought they were negotiating a cost-plus contract for any purpose. Plaintiffs also point to the fact that following the authorization by the Wage Adjustment Board for the payment of the increased wages on this contract, plaintiffs were reimbursed for the increased price of the labor on all work covered by change orders issued subsequent to the Wage Adjustment Board decisions. In this connection it should be noted that the Wage Adjustment Board had authorized the increases in connection with this contract for the payroll periods following the various dates on which the increased rates were authorized. As a result of the Wage Adjustment Board decisions, these increased rates became the prevailing rates for the various trades involved in the Denver area. The change orders involving additional work were, in effect, new contracts let to plaintiffs and it was perfectly proper for the Government to estimate the cost of those contracts on the basis of the then prevailing wage rates in the area. Such action was in no sense a recognition by defendant that it was obligated to pay increased rates on the unmodified portion of the original contract.

In support of its other contentions, plaintiffs rely upon this court's decision

in the case of Sunswick Corp. v. United States, 75 F.Supp. 221, 222, 109 Ct.Cl. 772, certiorari denied 334 U.S. 827, 68 S.Ct. 1337, 92 L.Ed. 1755. The Sunswick case involved a lump sum construction contract in which the contractor was directed to pay all labor employed on the work at wage rates "not less or more than those stated in the specifications (subject to Executive Order Number 9250 and the General Orders and Regulations issued thereunder)". General Order No. 13, issued pursuant to Executive Order 9250, provided that "the Wage Adjustment Board shall have power * * * (1) to hear and issue directive orders in labor dispute cases, and (2) to make final rulings on voluntary wage and salary adjustments requiring the approval of the National Wage Labor Board." Prior to making its bid, the Sunswick Corporation investigated conditions at the site of the work and determined to its satisfaction that the wage rate for carpenters, among others, determined by the Secretary of Labor to be $1.25 per hour, was the prevailing rate for carpenters in the area. During the early part of the contract, plaintiff was able to hire carpenters at the $1.25 rate. During the third week of the contract, however, the local carpenters' union informed plaintiff that the work being done by carpenters on the project was "waterfront work" which carried a rate of $1.42½ per hour. The union demanded that this higher rate be paid to all carpenters employed on the Sunswick project. Plaintiff at all times disputed the union's contention and after the United States Conciliation Service had failed to settle the controversy, the Secretary of Labor certified the matter as a dispute case to the National War Labor Board which in turn referred the dispute to the Wage Adjustment Board pursuant to General Order No. 13 mentioned above. After a full hearing before a hearing officer, with representatives of the plaintiff, the union, and the contracting officer participating, the Wage Adjustment Board adopted the recommendations of the hearing officer which were favorable to the union's claims and issued a *directive order* to plaintiff directing it to pay all carpenters on the project $1.42½ per hour retroactive to the beginning of the project. We held that plaintiff's contract giving effect to the clauses with reference to Executive Order 9250, obligated plaintiff to pay its carpenters either the $1.25 per hour rate specified as both the minimum and maximum rate, or in the event of a labor dispute, such other rate as, under the machinery set up pursuant to Executive Order 9250, plaintiff might be *directed* to pay. We concluded that plaintiff was required to pay the increased wages ordered by the Wage Adjustment Board directive order or subject itself to the penalty of either having the unpaid difference withheld, or its contract terminated, and that the War Department (the contracting agency) had, by the terms of its contract, delegated to the Wage Adjustment Board authority to modify by directive order the specifications as to such rates. Thus it resulted that the Government, in its capacity as a contracting party, imposed on the plaintiff a burden of performance which it was not intended by the contract should be borne by plaintiff without an adjustment of the contract price.

The facts in the present case do not bring the case within the holding of the Sunswick case. There was no labor dispute and no directive order in the instant case. Plaintiffs were perfectly willing to pay the increased rates and voluntarily requested permission of the Wage Adjustment Board for the payment of such higher rates. The resulting actions of the Wage Adjustment Board on the various applications of plaintiffs did not direct or require plaintiffs to do anything. They merely authorized plaintiffs to pay the rates as requested, not retroactively, but beginning the payroll period following the date of the decisions.

Plaintiffs also placed some reliance on the case of Paretta Contracting Co. v. United States, 109 Ct.Cl. 324. That case involved a wrongful order by the contracting officer directed to the contractor to pay increased rates. In that case we held that the activating cause of plaintiff's paying the increased rate was the Government's demand that it do so and we accordingly

allowed recovery. If the contracting officer had not ordered plaintiff to pay the increased rate and plaintiff had merely followed the permissive ruling of the Wage Adjustment Board and voluntarily paid the rate, no ground for recovery would have existed. In the instant case plaintiffs were not ordered by the contracting agency to pay the increased rates authorized by the Wage Adjustment Board.

█ It is true that plaintiffs may have been compelled by circumstances to pay the increased wages authorized by the Wage Adjustment Board but they were not so compelled by the Government in its capacity as a contractor, and there is no provision in plaintiffs' contract which requires the Government to reimburse plaintiffs for increased wages voluntarily paid by plaintiffs.[2] On the contrary, plaintiffs' contract specifically provided in paragraph 2–2 of the specifications that no increase in the contract price would be allowed or authorized because of the payment of wage rates in excess of those listed in the specifications (Finding No. 7).

We accordingly conclude that plaintiffs are not entitled to recover, and the petition is therefore dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.

2. Irwin & Leighton v. United States, 115 Ct.Cl. 18.