Jones, Judge,
delivered the opinion of the court;
Plaiiitiffs instituted this suit on two claims arising out of a contract for the construction of superstructures for Laurel Homes Housing Project in Cincinnati, Ohio. They set forth Claims A and B.
Claim A is for a balance alleged to be due as a part of the contract price for such construction.
Claim B is for the sum of $240,045.54, which amount plaintiffs assert was paid for wages in excess of the minimum rates prescribed in the contract.
Defendant moves the court to dismiss Claim B of plaintiffs’ petition on the ground that it fails to state a cause of action against the United States. Claim A is not involved in the motion to dismiss.
Plaintiffs allege that on Friday, January 22, 1937, there occurred in the Ohio Valley the greatest flood in its history, and that as a result of the flood which extended over a period of ten days, there was created a vast amount of building and repair work in the river valleys; that a very serious shortage of labor in the construction trades followed and that as a result of such conditions it was necessary for the plaintiffs to pay increased wages in the sum indicated. Plaintiffs further allege that on account of the provisions of the contract, together with other acts on the part of the defendant, plaintiffs are entitled to recover the amount of such increased wages.
*252 The pertinent parts of the contract are as follows:
ART. 18 (a) There shall be paid each employee engaged on the project in the trades or occupation listed in the Specification not less than the hourly, weekly, or monthly wage rate prescribed for the same in the Specification. * * *
Art. 19 (a) The minimum wage rates herein established shall be subject to change by the Administrator. In the event that as a result of fundamental changes in economic conditions the Administrator from time to time establishes different minimum wage rates from those specified in the contract or contracts for work on the project, the contract price shall be adjusted accordingly by the parties thereto so that the contract price to the contractor under any contract or to any subcontractor under any subcontract shall be increased by an amount equal to any such increased cost or decreased in an amount equal to such decreased cost. [Italics supplied.]
Section 5 of the special conditions of the contract (Specifications pp. 11-18) provides as follows:
Sec. 5. Wage Kates * * *
1. Subject to the Specification, and the Contract, the hourly wage rates to be paid by the Contractors shall be not less than the following: * * *
*******
5. The foregoing specified- wage rates are minimum rates only and the Government will not consider any claims for additional compensation made by the Contractor because of payment by the Contractor of any wage rate m excess of the applicable rate contained herein. All dispute in regard to the paiyment of wages in excess of those specified herein shall be adjusted by the Contractor.’ [Italics supplied]
Plaintiffs further allege that during the period of the contract the defendant authorized increased working hours and increased wages on a general scale in connection with a Resettlement project known as Green Hills in North Cincinnati, and that such Government work being carried on contemporaneously with plaintiffs’ work the defendant thereby created a condition which forced plaintiffs to increase wages in order to insure the timely and satisfactory completion of the work for which they had contracted.
*253 It is further alleged that the defendant recognized that a fundamental change in economic conditions had taken place and consequently it became the duty of the defendant, pursuant to the terms of the contract, to adjust the contract price accordingly.
In the light of the provisions of the contract and specifications we do not think the allegations in reference to Claim B are sufficient to state a cause of action.
The contract did not purport to set or determine the wages which should be paid in connection with the project. It simply established minimum wage rates below which plaintiffs might not go. It provided a flooring, but in no sense undertook to guarantee that the minimum wage rate should be the actual wages to be paid.
While the provisions of Article 19 (a) authorized the administrator to change the minimum wage rates as a result of fundamental changes in economic conditions, this is a matter which was left to his discretion. Its manifest purpose was to protect labor so that in the event changing conditions made it advisable he might increase the minimum requirements in order that labor should be assured a proper wage. It provided that if the administrator should stipulate a higher minimum wage as a requirement of the contract, the contract price should be adjusted accordingly. This step was not taken. On the contrary, the administrator specifically declined to take such action.
This interpretation is made doubly clear by the special conditions set out in Section 5 of the special conditions in the specifications wherein it is stated that the “specified wage rates are minimum rates only and the Government will not consider any claims for additional compensation made by the Contractor because of payment by the Contractor of any wage rate in excess of the applicable rate.”
This viewpoint is further strengthened by the fact that in the original printed form of the contract (attached to plaintiffs’ petition) the first sentence of Article 18 was printed to read as follows:
There shall be paid each employee engaged on the project in the trade or occupation listed in the Specification, the hourly, weekly or monthly wage prescribed for the same in the Specification. * * *
*254 This sentence was stricken from the contract and the following typewritten statement inserted:
ARTICLE 18. The first sentence in paragraph (a) has been changed to read as follows:
“There shall be paid each employee engaged on the project in the trades or occupations listed in the Specification not less than the hourly, weekly, or monthly wage rate prescribed for the same in the Specification.”
Likewise the printed form of Article 19 (a) was changed so that instead of specifying wage rates it provided for minimum wage rates.
These changes and provisions show clearly that the parties did not establish a wage schedule, but rather a flooring for wage rates.
To construe the contract as meaning that "there is no difference between a contract setting the rates of pay and one prescribing minimum rates, and that defendant is obligated to increase-the minimum rates at any time wages are increased, is to ignore the plain terms of the contract and specifications.[1]
We do not think the fact that another branch of the Government found it advisable to increase wages on an entirely different project in the same vicinity created any obligation on the part of the Government to vary the terms of the contract which plaintiffs had undertaken.
The same conditions apparently caused the wages to be increased on both projects. These conditions were the fault of neither the defendant nor the plaintiffs.
The fact that plaintiffs and defendant executed a second contract on June 23, 1937, which stipulated a different minimum wage level than that provided in the instant case does not affect the obligations of the contract upon which plaintiffs sue. The increases in the minimum wage levels provided in the second contract indicated only a recognition by the defendant that wage levels had in fact risen in the vicinity. The second contract like the first provided that plaintiffs assume the risk of all wage increases in excess of the minimum. The increases in the second contract did *255 not operate as a waiver of Special Condition 5 of the first contract.
For the reasons stated the motion to dismiss Claim B of plaintiffs’ petition is sustained and the petition as to said claim is dismissed.
It is so ordered.
Madden, Judge; Whitaker, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.

 Carroll v. United States, 67 C. CIs. 513, 518.