**BATESON–STOLTE, INC.,**

v.

**UNITED STATES.**

No. 141–57.

United States Court of Claims.
April 8, 1959.

John L. Kilcullen, Washington, D. C., for plaintiff. O. P. Easterwood, Jr., and McNutt, Dudley & Easterwood, Washington, D. C., were on the briefs.

Clare E. Walker, New York City, with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

WHITAKER, Judge.

This is a suit for $193,637.95 in additional expenses incurred by plaintiff in the performance of a Government contract. The defendant has moved the court for judgment on the pleadings dismissing plaintiff's petition on the ground that it fails to state a claim upon which relief can be granted. In an opinion dated May 7, 1958, this court denied defendant's motion without prejudice in order to allow plaintiff to amend its petition to allege the substance of those portions of the subject contract upon which it relied as required by rule 12(d) of the Rules of this court, 28 U.S.C.A. Plaintiff has now amended its petition and defendant has renewed its motion.

The facts as alleged by the petition are as follows: Plaintiff, a joint venturer composed of J. W. Bateson, a Texas corporation, and Stolte, Inc., a California corporation, on October 11, 1950, contracted with the Corps of Engineers, U. S. Army, for the construction of a powerhouse and appurtenant structures at the Clark Hill Project, Clark Hill, Georgia and South Carolina. The total contract price was $7,079,790.50 and called for the completion of the work by November 30, 1954. At the time that the contract was entered into there was ample labor in the area and no other Government projects were competing for the use of this labor force.

In preparing its bid, the plaintiff considered the labor cost and supply in the area and estimated such costs on the basis of prevailing wage rates. The wage rates as determined by plaintiff were the same as those found by the Secretary of Labor in accordance with the provisions of the Davis-Bacon Act, as amended, 40 U.S.C.A. § 276a.

Simultaneously with the award of the contract for the Clark Hill powerhouse, the Government, acting through the Atomic Energy Commission, was planning the construction of a major project involving expenditures estimated at approximately a billion and a quarter dollars in the same area as the Clark Hill Project, and within a week after plaintiff signed its contract, the contract for the Atomic Energy project was awarded. The Corps of Engineers had been consulting with the Atomic Energy Commission as to the location of the project and was charged with the responsibility of obtaining the necessary land by purchase and/or condemnation.

The Government realized that the Atomic Energy project would substantially affect the labor supply, labor rates, and conditions in the area, since they estimated that approximately 35,000 construction workers would be needed. Plaintiff's petition does not show whether or not plaintiff knew of the Government's Atomic Energy project, but in estimating its labor costs it did not take into consideration the fact that it would be in competition with Atomic Energy for the available labor.

In February 1951, the Secretary of Labor, pursuant to the Davis-Bacon Act, determined the wages to be paid on the Atomic Energy project. In making this determination, the Secretary found that the prevailing wage rates in the locality at that time, which were the same as the wages paid by plaintiff, would not be high enough to draw an adequate supply of labor. Consequently the Secretary

456

utilized wage rates prevailing in metropolitan areas as far as 150 miles from the project site. These wage rates were considerably in excess of the wage rates actually prevailing in the locality on current construction, including the wage rates that plaintiff was paying on the Clark Hill powerhouse project. This disparity between the wage rates on the Atomic Energy project and plaintiff's project made it exceedingly difficult for plaintiff to obtain and hold construction workers, who were disposed to transfer to the Atomic Energy project because of the higher wages. This necessitated the raising of wages on plaintiff's job in order to put it on a parity with the competing project. However, during the period January 25, 1951, to August 2, 1951, plaintiff was prohibited from raising wages by reason of a wage freeze imposed by the Wage Stabilization Board. In order to offset the wage freeze, plaintiff offered its workers substantial overtime so that their take home pay would equal that of workers on the Atomic Energy project. After the freeze was lifted, plaintiff increased its wage rates up to the level of the rates authorized for the Atomic Energy project.

Because of the increased costs in labor caused by the competition of the Atomic Energy project, plaintiff alleges it paid $193,637.95 in wages which were not contemplated at the time it bid on the contract. Plaintiff made a claim for the increased wages resulting from the Atomic Energy project. This claim has been denied and plaintiff has brought suit on the ground that such denial was capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or was not supported by substantial evidence. Plaintiff contends that it is entitled to recover under article 4 of the contract governing changed conditions, or, in the alternative, that it is entitled to recover on the basis of a breach by defendant of an implied condition in the contract that neither party will hinder the other in the discharge of the obligations created by the contract.

Article 4 of the contract, relating to changed conditions, requires an equitable adjustment only for subsurface and/or latent *physical* conditions. Plaintiff's complaint does not relate to physical conditions and, therefore, it is not entitled to recover under article 4; but it may be entitled to recover on the alternative ground it asserts, which is the implied condition in every contract that neither party will hinder the other in its performance or increase the cost thereof.

In estimating the cost of doing the job plaintiff, of course, used the prevailing wage rate. Had it known of the large labor force to be employed on the Atomic Energy job and that a higher minimum wage rate was to be fixed for this job, in order to attract this large force, plaintiff, of course, would have used this higher rate, and its bid would have been this much higher. But there are indications that plaintiff did not know this. At any rate, it bid on the basis of the prevailing wage.

Plaintiff's petition alleges that at the time the Corps of Engineers and plaintiff entered into the contract, the Corps of Engineers had knowledge of the fact that the Atomic Energy Commission was preparing to build an enormous plant adjacent to plaintiff's project. It does not expressly allege, but it is implied, that the Corps of Engineers knew that a very large labor force would be necessary to construct the Atomic Energy project and that this labor force could not be secured in the immediate vicinity of the work, but would have to be secured in urban centers where the prevailing wage rate was considerably higher than the rate prevailing in the immediate vicinity of the work. If the Corps of Engineers in fact knew these things, and if in fact the plaintiff did not know about them, it would seem that it was the duty of the Corps of Engineers to disclose these things to the plaintiff prior to entering into a contract with it.

If the defendant knew that it was going to do a thing which of neces-

sity would require plaintiff to pay a wage greater than that prevailing in the community in which its work was to be done, and the plaintiff was ignorant of this fact, it would seem that good faith required the defendant to apprise plaintiff thereof. If defendant caused the increase in the wages plaintiff had to pay, defendant is liable for the increase. It seems hardly necessary to cite authority for this statement, but this is the clear implication of the decision of the Supreme Court in United States v. Beuttas, 324 U.S. 768, 772, et seq., 65 S.Ct. 1000, 89 L.Ed. 1354.

There can be no doubt about the fact, if the facts assumed are true, that the Government, by the construction of the Atomic Energy Commission project in the immediate vicinity of plaintiff's work, did in fact necessitate the payment of higher wages by plaintiff, and thus cause an increase in cost of performance of plaintiff's contract.

But this does not necesarily render the defendant liable. It is at least questionable that defendant should be held liable, unless the agency dealing with plaintiff had knowledge of what the Atomic Energy Commission was going to do. If it had been the Atomic Energy Commission that had dealt with plaintiff, it would have been its duty to disclose to plaintiff that it was going to use this very large labor force on this other project, so plaintiff could have taken this into consideration in estimating its labor costs. If it had not done so, it would have been responsible for the increase over what plaintiff had estimated in preparing its bid. But, in a business so vast as that engaged in by the United States Government, with its multitudinous departments, bureaus, and independent agencies, with various and sundry projects scattered all over the world, it is impossible for one department to know what another department is going to do. In such case, it seems unreasonable to charge one agency with knowledge of what another one is going to do. It would seem that defendant should be

held liable only if the agency that dealt with plaintiff had knowledge of the impending employment of this huge labor force.

But we have assumed in the foregoing statement that plaintiff was ignorant of the fact that the Atomic Energy Commission was going to construct this huge project. If it knew of the enormity of the project, it should have known that the necessary labor could not have been secured in the immediate vicinity and would have to be secured elsewhere, which would probably necessitate the payment of higher wages, in which event it also would have to pay wages higher than those prevailing in the community. We do not know what information plaintiff had. The petition alleges that the Atomic Energy Commission awarded a contract for its project within one week from the date plaintiff signed its contract. If so, and if the Atomic Energy Commission advertised for bids on its project, plaintiff knew or should have known that the Atomic Energy Commission was going to construct its project, but we do not know whether or not the Atomic Energy Commission advertised for bids. This we would like to know. Whether or not plaintiff had knowledge, or should have had knowledge, of the impending construction of this project is quite material. We would also like to know if plaintiff was chargeable with knowledge that this very large labor force was to be employed.

We think it is immaterial to a proper disposition of this case that the Government in the erection of the Atomic Energy Commission project was or was not performing a sovereign act. Even though it was, the Government must have known that by the performance of that act it was going to increase plaintiff's cost of performance. If it had this knowledge, and plaintiff did not have it, it was under the duty to disclose it, whether it was a sovereign act or not. The Government's status as a sovereign confers upon it no privilege to mislead

contractors, or to profit from their ignorance.

Plaintiff does not need to call in question the action of the Secretary of Labor in determining the prevailing wage in the community in which plaintiff was to do its work, and his action in determining the prevailing wage in the 150-mile radius from which the Atomic Energy Commission had to draw its labor. Its case rests, not on these acts of the Secretary of Labor, but upon the obligation on the part of the Corps of Engineers to disclose material information relating to the cost of performance, which may have been in its possession, and of which plaintiff was possibly ignorant.

Because we do not know what knowledge the Corps of Engineers had, and because we do not know what information the plaintiff had, or could have obtained by reasonable diligence, we think the case should be referred to a commissioner for the development of all the facts.

In the foregoing observations we have refrained from expressing positive opinions on the law of the case, preferring to wait for that until we are in possession of the full facts. The observations made are only for the guidance of the parties and the trial commissioner in the taking of testimony. When all the facts are in, we shall then be in position to come to a conclusion on the question of defendant's liability.

Defendant's motion for judgment on the pleadings is overruled. The case will be referred to a trial commissioner for trial.

It is so ordered.

MADDEN, Judge, concurs.

JONES, Chief Judge (concurring in part).

While I cannot agree to the full reasoning of the majority, I agree that the case should be referred to a trial commissioner to the end that the facts may be presented.

It is unthinkable that the authorized officials of the defendant would enter into a binding contract with the plaintiff without disclosing vital information which was in full possession of defendant's chosen officials and about which plaintiff alleges it knew nothing. This information was that a great project in that same area was already in process and nearing the final contract stage, which project would cost more than a billion dollars and would necessarily completely upset the labor market. This tremendous contract was to be let within a week.

If this were a case of first impression, I would be inclined to hold that the situation here was so extraordinary as to take it out of the general rule that a contractor must take chances on increased wages in the labor market. But in view of the decision of the Supreme Court in United States v. Binghamton Construction Co., Inc., 347 U.S. 171, 74 S.Ct. 438, 98 L.Ed. 594, and other cases cited in defendant's brief, we are inclined to believe plaintiff may not recover on this phase of the case.

But to hold that in the light of the affirmative action of the defendant in freezing the wages which plaintiff was permitted to pay and still at the same time absorbing, on an entirely different project, practically all the available labor within a radius of 150 miles at a higher price than plaintiff was permitted to pay is beyond the range of reason. It is as if one of the entrants in a prize ring were permitted to tie the hands of his adversary and at the same time leave his own hands free, which manifestly would violate the fundamental tenet of fairness. If that is the law it is a phase of the law in which no thoughtful citizen can take pride. When the light of reason and the logic of analysis is brought into play any seeming justification for such a holding fades away.

It has been held for generations that a party to a contract may not interfere with performance by the party to be

charged and still enforce the letter of the contract.[1]

If placing a frozen ceiling on the wages which plaintiff was permitted to pay and at the same time permitting the party instituting the freeze to pay higher wages on another tremendous project in the same neighborhood, which the officials must have known would absorb all the available labor in that area, is not interfering, then I have read the definitions in the law and secular lexicons to no purpose.

It is to plaintiff's credit that he minimized the damages by paying overtime rates.

I would allow plaintiff to recover at least the excess labor costs during the period, of the freeze.

In any event, I would authorize a trial commissioner to take evidence on this phase of the case. Since the case is to be assigned to a trial commissioner, I agree that it may be sent generally.

LARAMORE, Judge (dissenting).

I respectfully dissent for the following reasons: The majority opinion is based upon the premise that the defendant was under a duty to disclose to plaintiff that the Atomic Energy Commission was preparing to build a plant in the vicinity of the Clark Hill project and that a higher minimum wage rate was to be fixed for this job. The majority say that failure to disclose these facts gives rise to a cause of action based upon the implied condition in every contract that neither party will hinder the other in its performance of the contract or increase the cost of performance. I believe this to be an erroneous conception of the law.

There can be little or no doubt that every contract carries with it an implied promise that one party will do nothing to prevent or hinder the other in its performance. Williston on Contracts, Rev. Ed., Vol. V, § 1293(A); Restatement of the Law of Contracts, § 315. This implied promise or condition applies equally to the Government as well as to private individuals, Kehm Corp. v. United States, 93 F.Supp. 620, 119 Ct.Cl. 454; Fuller Co. v. United States, 69 F.Supp. 409, 108 Ct.Cl. 70, and extends to acts which increase the cost of production. York Engineering Co. v. United States, 62 F.Supp. 546, 103 Ct.Cl. 613. Of course, where the injured party has assumed the risk of the act creating the hindrance, or if such act was one which under the circumstances the offending party was permitted to take, then no liability for breach can exist. Under the facts alleged in this case, I believe there has been no breach of an implied condition to the contract because there was no obligation on the part of the Corps of Engineers to reveal any information with respect to the Atomic Energy project. It is true that an adjacent project may result in damage to a Government contractor, but I believe that the act creating the competing project was one which the Government was permitted to take and for which it cannot be made to answer in damages. See Standard Accident Insurance Co. v. United States, 59 F.Supp. 407, 103 Ct.Cl. 607, certiorari denied 326 U.S. 729, 66 S.Ct. 37, 90 L.Ed. 434. It is not unlike the example given in the Restatement, cited supra, which states:

"3. A contracts to sell and B to buy in the future a large quantity of Georgia pine. Before the time for performance B makes large purchases of Georgia pine from other parties, thereby making it more difficult for A to fulfill his contract. B has not committed a breach of contract. Risk of such hindrance

---

1. Restatement of the Law of Contracts, sec. 315; Williston on Contracts, sec. 1293A; Anvil Mining Co. v. Humble, 153 U.S. 540, 14 S.Ct. 876, 38 L.Ed. 814; LeVeque v. United States, 96 Ct.Cl. 250; Beuttas v. United States, 60 F.Supp. 771, 101 Ct.Cl. 748 (rev. on other grounds 324 U.S. 768, 65 S.Ct. 1000, 89 L.Ed. 1354; Sunswick Corp. of Del. v. United States, 75 F.Supp. 221, 109 Ct.Cl. 772; York Engineering & Const. Co. v. United States, 62 F.Supp. 546, 103 Ct.Cl. 613, certiorari denied 327 U.S. 784, 66 S.Ct. 700, 90 L.Ed. 1011.

as has occurred was assumed by A. If B's purpose in making other purchases was to corner the market, or otherwise hinder performance in ways or for purposes not within the risk assumed, he would have committed a breach."

Since there is no allegation in the petition that defendant's purpose in building the Atomic Energy project was to directly hinder plaintiff's performance, it does not fall within the exception of the example. If there is no breach by reason of creating a competitive situation, then it seems to me no cause of action results from the failure to inform the plaintiff that defendant plans to do that which the law allows. To require the Government to inform all contractors of its plans with respect to future projects places an unreasonable burden upon its contractual freedom. It would have the effect of placing the Government in a fiduciary relationship to its contractors. The cases are legion which say the Government is to be treated like any other party to a contract and stands in no special position, either beneficial or detrimental. United States v. Standard Rice Co., 323 U.S. 106, 65 S.Ct. 145, 89 L.Ed. 104; United States v. Utah, Nevada & California Stage Co., 199 U.S. 414, 26 S.Ct. 69, 50 L.Ed. 251; United States v. Smoot, 15 Wall. 36, 76 L.Ed. 1344. The majority has cited no cases, and we know of none, which hold that one party to a contract must disclose information to a prospective bidder relating to another and different contract which might cause competition in the labor market. However, unfortunate as it may be that plaintiff has suffered through competition for existing labor, I fail to see that it has stated a cause of action upon which a judgment can be rendered.

Furthermore, in my opinion, the problem as shown by the petition and briefs of the parties presents the question as to whether the acts of the Secretary of Labor in fixing a higher minimum wage rate on the Atomic Energy project and resulting increased labor costs to plaintiff creates liability on the part of the Government.

Unless the contract expressly provides otherwise, the risk of wage fluctuations in the labor market is to be borne by the contractor whose duty it is to perform for a stipulated sum. The reliance by the plaintiff contractor upon the wage determination by the Secretary of Labor is misplaced. This would be true even if the Secretary's determination does not fix the actual prevailing rates in the area. United States v. Binghamton Construction Co., 347 U.S. 171, 74 S.Ct. 438, 98 L.Ed. 594. In Binghamton, plaintiff was the successful bidder on a Government construction contract. In preparing its bid plaintiff relied on the Secretary of Labor's Davis-Bacon Act determination of the prevailing wages in the area. Actually the prevailing wages were higher than those found by the Secretary, and in order to obtain workmen the plaintiff of necessity had to meet the higher pay schedule. Thereafter, suit was brought in the Court of Claims for the difference between the wages actually paid and the rates determined by the Secretary. In reversing this court's judgment, which was in favor of the plaintiff, the Supreme Court said (347 U.S. at pages 176–178, 74 S.Ct. at page 441):

"The Act itself confers no litigable rights on a bidder for a Government construction contract. The language of the Act and its legislative history plainly show that it was not enacted to benefit contractors, but rather to protect their employees from substandard earnings by fixing a floor under wages on Government projects. Congress sought to accomplish this result by directing the Secretary of Labor to determine, on the basis of prevailing rates in the locality, the appropriate minimum wages for each project. The correctness of the Secretary's determination is not open to attack on judicial review.

" * * * On its face, the Act is a minimum wage law designed for

the benefit of construction workers. The Act does not authorize or contemplate any assurance to a successful bidder that the specified minima will in fact be the prevailing rates. Indeed, its requirement that the contractor pay 'not less' than the specified minima presupposes the possibility that the contractor may have to pay higher rates. Under these circumstances, even assuming a representation by the Government as to the prevailing rate, respondent's reliance on the representation in computing its bid cannot be said to have been justified."

It is quite clear from the above excerpts of the Binghamton opinion that the Secretary's determination is not open to review by this court nor is his determination any guarantee that such is the prevailing wage in a given area. In short, no cause of action is created by a minimum wage rate determined by the Secretary. However, plaintiff maintains that its case does not fall within the Binghamton ruling because no claim is made that the wage rate determined for its contract was either erroneous or misrepresented. Its contention is solely that the defendant's act with respect to wage rates on the Atomic Energy project brought about a situation which resulted in higher costs of its performance and thus breached an implied condition of the contract. Even viewed in this light, plaintiff's grievance is still directed to the Secretary of Labor's wage determination. In other words, plaintiff is attempting to do collaterally that which the Supreme Court has ruled it may not do directly. Were we to hold that defendant breached plaintiff's contract by increasing the minimum wage rate on the Atomic Energy project, we would of necessity have to find that the Secretary of Labor erroneously determined the prevailing rates, either as applied to plaintiff's contract or to the Atomic Energy project. This is nothing more than an attempt to have this court review the acts of the Secretary which is without our jurisdiction, United States v. Binghamton, supra; Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108.

Thus plaintiff is in a position somewhat similar to that of the plaintiff in LeVeque v. United States, 96 Ct.Cl. 250, wherein we said:

"We do not think the fact that another branch of the Government found it advisable to increase wages on an entirely different project in the same vicinity created any obligation on the part of the Government to vary the terms of the contract which plaintiffs had undertaken."

Since I believe that there was no duty on the part of the Corps of Engineers to inform plaintiff of the impending Atomic Energy project and that plaintiff has no cause of action based upon the fixing of a higher wage rate, I would therefore grant defendant's motion for judgment on the pleadings.

MARIS, Circuit Judge (Ret.), sitting by designation, joins in the foregoing dissenting opinion.