BATESON-STOLTE, INC.,
v.
The UNITED STATES.
No. 141-57.

United States Court of Claims.
July 18, 1962.

See also 172 F.Supp. 454, 145 Ct.Cl. 387.

John L. Kilcullen, Washington, D. C., for plaintiff. McNutt, Dudley & Easterwood, Washington, D. C., were on the brief.

Alfred H. O. Boudreau, Jr., Washington, D. C., with whom was William H. Orrick, Jr., Asst. Atty. Gen., for defendant.

WHITAKER, Judge.

This is a suit for $193,637.95, additional expenses alleged to have been incurred by plaintiff in the performance of a contract for the construction of a power house and appurtenant structures at the Clark Hill Project in Georgia and South Carolina.

Under the Davis-Bacon Act, as amended (40 U.S.C.A. § 276a et seq.), plaintiff was required to pay not less than the prevailing wage rate in the vicinity of the project, as determined by the Secretary of Labor. In addition, for a short period of time, plaintiff was not only required to pay not less than this minimum wage rate but also was prohibited from paying any more. However, plaintiff admits that it suffered no damage during this period.

At the time of the execution of the contract for the Clark Hill Project, on October 11, 1950, the Government, acting through the Atomic Energy Commission (hereinafter, AEC), was planning the construction of a major project, involving expenditures estimated at over a billion dollars. While the AEC at that time had not selected a site for its project, a site 40 miles down the Savannah River from the Clark Hill Project was one of several under serious consideration. This site was finally selected on

November 24, 1950, and the project was constructed at this point. This AEC project required a very large labor force, much larger than could be obtained in the immediate neighborhood of the project, necessitating the recruiting of labor from the larger municipalities in the area. This made it necessary for the AEC to pay considerably higher wages than the wages established by the Secretary of Labor as the prevailing wage in the vicinity of the Clark Hill Project. Since the AEC project was only 40 miles downstream from the Clark Hill Project, this great demand for labor, and the payment of wages higher than the prevailing wage, made it necessary for plaintiff to pay its workers, as soon as permission to do so could be obtained, wages higher than the prevailing wages, and higher than it would have been required to pay had the AEC project not been in competition with it.

Plaintiff sues for the difference in the wages predetermined by the Secretary of Labor and the wages it was required to pay.

This case was previously before us on defendant's motion for judgment on the pleadings. In an opinion rendered on April 8, 1959, 172 F.Supp. 454, 145 Ct.Cl. 387, we expressed the opinion that if the Corps of Engineers knew that this project was to be located in this vicinity and that this large labor force would be necessary to construct the AEC project, to secure which wages considerably higher than the prevailing wage rate would have to be paid, the Corps of Engineers was under the duty to disclose it. Although the United States was the contractor both for the Clark Hill Project and for the AEC project, we nevertheless held that, in view of the vastness of the business engaged in by the United States Government, with its multitudinous departments and bureaus and independent agencies scattered all over the world, the knowledge of the AEC could not be imputed to the Corps of Engineers. We stated that the Government was liable only if the Corps of Engineers had knowledge that the AEC project was to be located in the immediate vicinity of the Clark Hill Project, and that it would require a very large labor force, who would have to be paid a higher wage than that prevailing in the vicinity.

The case was remanded to the Trial Commissioner to take proof on these questions. The case is now before us upon the Commissioner's report. That report shows that the Corps of Engineers was requested by the AEC to survey more than 100 sites in Arkansas, Louisiana, Texas, Mississippi, Alabama, Georgia, Tennessee, Kentucky, West Virginia, Missouri, Illinois, Indiana and Ohio as possibly suitable locations for the erection of this project. The Corps of Engineers was told by the AEC the location would have to be in the vicinity of a town of not less than 25,000 to 50,000 inhabitants, in order to secure the necessary labor force. The Corps of Engineers was not advised of the immensity of the project, nor of the large labor force that would be required, but it was told that an area of from 100,000 to 150,000 acres would be required.

█ Among the 100 sites surveyed was the one in the neighborhood of the Clark Hill Project, and the Corps of Engineers recommended it as one of a number of suitable sites. However, it was still surveying sites, in Wisconsin, Michigan, and Minnesota, when bids were opened. It was not until November 10, 1950, that the contractor for the AEC project finally made its selection of the site to be recommended to the AEC, and the AEC did not make the final selection until November 24, 1950. Our Trial Commissioner has found, which finding we have adopted:

"On October 11, 1950, when the plaintiff and a contracting officer of the Corps of Engineers entered into the contract for the construction of the powerhouse and appurtenant works at the Clark Hill Project, neither the plaintiff nor the Corps of Engineers knew, or could have known through the exercise of reasonable diligence, that the new pro-

duction plant of the Atomic Energy Commission would be located and constructed within the same geographical area that included the Clark Hill Project of the Corps of Engineers. * * * "

Furthermore, when the contract for the Clark Hill Project was awarded, the Corps of Engineers had no knowledge of the large amount of labor that would be required.

In view of these findings of the commissioner, which we have adopted as the findings of fact of the court, we do not think the Corps of Engineers was in possession of any information which it was under the duty to disclose to plaintiff prior to the execution of the contract.

On oral argument we understood plaintiff to say that it no longer relied upon the failure of the Corps of Engineers to disclose pertinent information, but relied, rather, on the defendant's breach of its implied promise not to hinder or delay plaintiff in the performance of its contract. It says the establishment of the AEC project in the vicinity of the Clark Hill Project and the fixing of a minimum wage for this project higher than the minimum plaintiff was required to pay was a breach of this implied condition.

■ Let it be remembered that the provision for the payment of a minimum wage was not for the benefit of the contractor and was no warranty that he would not be required to pay a higher wage. United States v. Binghamton Construction Co., 347 U.S. 171, 74 S.Ct. 438, 98 L.Ed. 594. But if the defendant directly required the contractor to pay a higher wage, it is liable for the increase. Sunswick Corp. v. United States, 75 F. Supp. 221, 109 Ct.Cl. 772. Also, if the defendant required the contractor to pay increased wages by the doing of some act it had explicity or impliedly agreed not to do, it would be liable. Absent such an agreement, the defendant was at liberty to do what it pleased.

So, our question would seem to be: Did the defendant agree, expressly or impliedly, when it let the Clark Hill contract, not to start any other project in the vicinity during the life of the contract that would require a large supply of labor? Did the defendant agree to give plaintiff first call on the labor market, and promise not to interfere therewith, whatever might be the needs of the Government? Did the Government thus tie its hands for the life of the Clark Hill contract, which was to require four years to complete?

Can you not imagine what the reply of the Corps of Engineers would have been, had plaintiff requested the incorporation of such a provision in the contract? Since defendant would never have expressly agreed to such a provision, it cannot be successfully contended that defendant impliedly agreed to it.

■ Indeed, no contracting officer had the power to thus bind the hands of the Congress and the various departments and independent agencies of the Government. It is not conceivable that the contracting officer on the Clark Hill Project would have assumed to say that the Atomic Energy Commission, or any other Government agency, would not build any other project in the vicinity that required a large labor force. He could not thus circumscribe the exercise of the sovereign power, and he would not have assumed to do so.

Nor can it be said that the Corps of Engineers impliedly promised that if another agency did start another project in the vicinity within the four-term of the contract, as a result of which plaintiff was required to pay higher wages, it would pay the increased cost. The project of the AEC was to promote the national defense. Could any contracting officer restrict the Government in the doing of an act deemed necessary for the national defense? On the principle of the cases of Jones et al. v. United States, 1 Ct.Cl. 383, and Horowitz v. United States, 58 Ct.Cl. 189; 267 U.S. 458, 45 S.Ct. 344, 69 L.Ed. 739, the answer must be no. In Horowitz the Supreme Court quoted with approval what

we had said in Jones v. United States, supra, as follows:

" * * * In the Jones case, supra, the court said: 'The two characters which the government possesses as a contractor and as a sovereign cannot be thus fused; nor can the United States while sued in the one character be made liable in damages for their acts done in the other. Whatever acts the government may do, be they legislative or executive, so long as they be public and general, cannot be deemed specially to alter, modify, obstruct or violate the particular contracts into which it enters with private persons. * * * In this court the United States appear simply as contractors; and they are to be held liable only within the same limits that any other defendant would be in any other court. Though their sovereign acts performed for the general good may work injury to some private contractors, such parties gain nothing by having the United States as their defendants.'

"It was upon this ground that the demurrer in the present case was sustained by the Court of Claims. We think this was correct, and the judgment is *affirmed*."

In LeVeque et al. v. United States, 96 Ct.Cl. 250, plaintiffs had a contract that required the payment of a minimum wage. Plaintiffs alleged that "during the period of the contract the defendant authorized increased working hours and increased wages on a general scale in connection with a Resettlement project known as Green Hills in North Cincinnati, and that such Government work being carried on contemporaneously with plaintiffs' work the defendant thereby created a condition which forced plaintiffs to increase wages in order to insure the timely and satisfactory completion of the work for which they had contracted." Of this claim we said, at page 254:

"We do not think the fact that another branch of the Government found it advisable to increase wages on an entirely different project in the same vicinity created any obligation on the part of the Government to vary the terms of the contract which plaintiffs had undertaken."

In Beuttas v. United States, 60 F. Supp. 771, 101 Ct.Cl. 748, we held the Government liable for increasing the minimum wage in a contract to erect the superstructure of a building over the wages specified in a contract for the foundation. The Supreme Court reversed (324 U.S. 768, 65 S.Ct. 1000, 89 L.Ed. 1354) on the ground that the contract for the foundation was supposed to be completed before the work on the superstructure began, and that the union representing plaintiff's laborers had agreed to work for the wages specified throughout the contract period, and defendant had no reason to believe that its action would cause the union to breach its contract.

We call attention to the fact that in the Beuttas case it was the same governmental agency involved in both contracts; whereas here they were different agencies, one agency having no control over the activities of the other, nor the power to bind the other.

In York Engineering Co. v. United States, 62 F.Supp. 546, 103 Ct.Cl. 613, plaintiff sued, first, because its work was delayed by the Government's failure to supply sufficient labor, and to supply the necessary skilled labor; second, because the Government refused to reimburse it for increased taxes, and, lastly, because the Government required it to pay increased wages by paying WPA laborers in the vicinity more than the minimum amount which plaintiff was required to pay under the contract. We held, Judge Littleton dissenting, that " * * * The Government's action in raising WPA wages made it impossible or difficult for the plaintiff to secure labor at 45 cents an hour. If so, it was a violation of the terms which we found in Beuttas v. United States, [60 F.Supp. 771] 101 Ct. Cl. 748, to be implied in all contracts, i. e., subject to exceptions not here necessary

to define, one party to the contract will not so act as to increase the cost of performance by the other." This opinion was handed down on February 5, 1945.

On April 2, 1945, following, we decided the case of Standard Accident Insurance Co. et al. v. United States, 59 F.Supp. 407, 103 Ct.Cl. 607. In that case the plaintiff claimed reimbursement for increased wages which it was required to pay by reason of the fact that immediately after the award of the contract to plaintiff, defendant entered into a number of lump-sum contracts in the immediate vicinity of plaintiff's project, under which contracts wages were paid in excess of those which plaintiff had theretofore been required to pay. We said that when the defendant entered into its contract with plaintiff, it did not either expressly or impliedly stipulate that it would not thereafter enter into cost-plus contracts, and that it, indeed, had no power to do so. Hence, we concluded that the making of these contracts by the Government, even though they had the incidental effect of requiring plaintiff to pay its laborers increased wages, was not a violation of plaintiff's contract.

In Kirchhof et al. v. United States, 102 F.Supp. 770, 121 Ct.Cl. 476, plaintiffs' fixed-price construction contract with the Government contained minimum wage rates determined by the Secretary of Labor under the Davis-Bacon Act. These rates were also maximum rates because they could not be increased without authorization from the War Labor Board. While construction under plaintiffs' contract was progressing, that Board authorized payment of labor on other projects in plaintiffs' area at rates higher than the rates specified in plaintiffs' contract. To prevent their workers from leaving to work on these other projects, plaintiffs sought, and obtained, permission from the Board to increase their wage rates to the wage level prevailing on the other projects. Plaintiffs contended that the actions of the Wage Adjustment Board in increasing rates on non-federal work (which forced plaintiffs to pay higher rates to keep the job going) constituted a breach of the implied contractual condition that defendant would not hinder plaintiffs in their discharge of the contract. Of this we said, 102 F.Supp. at page 774, 121 Ct.Cl. at page 491:

"It is true that plaintiffs may have been compelled by circumstances to pay the increased wages authorized by the Wage Adjustment Board but they were not so compelled by the Government in its capacity as a contractor, and there is no provision in plaintiffs' contract which requires the Government to reimburse plaintiffs for increased wages voluntarily paid by plaintiffs. * * *"

We conclude that when the Corps of Engineers entered into its contract with plaintiff, it neither expressly nor impliedly agreed that the AEC would not enter into its contracts in the vicinity. We think this would have been true of any contract entered into by another agency of the Government. It is especially true where the subsequent contract was entered into in order to promote the national defense. This was a sovereign act for which the Government is not liable in damages.

Plaintiff's petition will be dismissed.

It is so ordered.

DURFEE and DAVIS, Judges, concur.

LARAMORE, Judge (concurring).

I concur in the result for the reasons set forth in my dissenting opinion in this case, when the same was decided on defendant's motion for judgment on the pleadings, No. 141–57, decided April 8, 1959. In other words, I believe plaintiff cannot recover in this action because of the Supreme Court's decision in United States v. Binghamton Construction Co., 347 U.S. 171, 176–178, 74 S.Ct. 438, 98 L.Ed. 594 wherein the Court stated:

"The Act itself confers no litigable rights on a bidder for a Gov-

ernment construction contract. The language of the Act and its legislative history plainly show that it was not enacted to benefit contractors, but rather to protect their employees from substandard earnings by fixing a floor under wages on Government projects. Congress sought to accomplish this result by directing the Secretary of Labor to determine, on the basis of prevailing rates in the locality, the appropriate minimum wages for each project. The correctness of the Secretary's determination is not open to attack on judicial review.

\*    \*    \*    \*    \*    \*

"On its face, the Act is a minimum wage law designed for the benefit of construction workers. The Act does not authorize or contemplate any assurance to a successful bidder that the specified minima will in fact be the prevailing rates. Indeed, its requirement that the contractor pay "not less" than the specified minima presupposes the possibility that the contractor may have to pay higher rates. Under these circumstances, even assuming a representation by the Government as to the prevailing rate, respondent's reliance on the representation in computing its bid cannot be said to have been justified."

In all other respects I agree with the majority opinion.

JONES, Chief Judge (concurring in the result).

While still adhering to the views expressed in my opinion concurring in part in the previous opinion in this case, 172 F.Supp. 454, 145 Ct.Cl. 387, 393, in the present posture of the case I have no choice but to concur in the result.

It is true that the contract in terms stipulated that the wages should be at the minimum rate specified in the contract. Nevertheless, almost immediately the Government, by executive decree, froze the wages then being paid which made the minimum wages being paid by plaintiff the maximum wages that could be paid. Wage freeze order, dated January 26, 1951, was published in the Federal Register January 30, 1951 (16 Fed. Reg. 816).

Within a few days thereafter, the Government established a billion-dollar project in the same area and immediately began paying wages substantially in excess of the wages which plaintiff was permitted to pay. This act, of course, drained off all the available labor in that and in surrounding areas. This freeze remained in effect several months before the defendant finally made an exception to the so-called wage freeze which permitted plaintiff after that time to pay wages somewhat comparable to the wages being paid by the defendant in the adjoining project.

On August 2, 1951, the Wage Stabilization Board issued an order which lifted the wage freeze of January 25, 1951, and authorized the employers in the construction industry to pay wages not in excess of the wage rates determined to be prevailing in a given locality by the Secretary of Labor pursuant to the Act. This regulation lifting the wage freeze was published in the Federal Register of August 2, 1951 (16 Fed.Reg. 7565).

It seemed to me then and it seems to me now that plaintiff at least should have been permitted to recover the damages proximately flowing from the defendant's direct action which made plaintiff completely helpless during these few months when the freeze order was in effect.

However, plaintiff apparently in an effort to concentrate on the much larger basis of recovery has abandoned this particular phase of its claim. This may have been due in part to the wording of the previous majority opinion. Nevertheless, if I understood correctly the plaintiff's counsel's statement in open court, this phase of the case is not now before us.

In the present state of the pleadings, evidence, and findings of fact I concur in the result.