**DONALD M. DRAKE COMPANY**
v.
**The UNITED STATES.**
**No. 90–68.**

United States Court of Claims.
March 19, 1971.

**170**

Stuart G. Oles, Seattle, Wash., attorney of record, for plaintiff. Bruce T. Rinker, Seattle, Wash., of counsel.

Edward J. Friedlander, Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

PER CURIAM:

This case was referred to Trial Commissioner David Schwartz with directions to prepare and file his opinion on the issues of plaintiff's motion and defendant's cross-motion for summary judgment under the order of reference and Rule 166(c). The commissioner has done so in an opinion and report filed on November 20, 1970, wherein such facts as are necessary to the opinion are set forth. Plaintiff filed a request for review by the court of the commissioner's recommendation for dismissal and the case has been submitted to the court on oral argument of counsel and the prior briefs and papers of the parties before the commissioner.

With respect to claim for the stop order in the area of spillage from above, the court points out that, under the sustainable findings of the Corps of Engineers Board of Contract Appeals, it was practically certain at the time of the bid that plaintiff would encounter such spillage, and plaintiff should have known this. The court does not have before it in this case any issue as to the application of the Suspension of Work clause where the contractor merely knows or should know, at the time the contract is made, that a suspension may possibly occur, or may not.

Since the court agrees with the opinion and recommended conclusion of the trial commissioner, as hereinafter set forth, it hereby adopts the same, together with the foregoing paragraph, as the basis for its judgment in this case. Therefore, plaintiff is not entitled to recover. Plaintiff's motion for summary judgment is denied, defendant's cross-motion is granted and plaintiff's petition is dismissed.

## OPINION OF COMMISSIONER

SCHWARTZ, Commissioner:

Plaintiff's claim arises out of a contract dated March 26, 1962 with the

Corps of Engineers for the relocation of several miles of railroad line and highway as part of the John Day Dam project on the Columbia River between Washington and Oregon. Claim is made for an equitable adjustment for increased costs allegedly occasioned by government disruption of plaintiff's work schedule. The claim, made under a standard Disputes clause in the contract, has been denied by the Army Corps of Engineers Board of Contract Appeals, ENG BCA No. 2725, 67–1 BCA ¶ 6230, on rehearing, 67–2 BCA ¶ 6550. In this court plaintiff contends that the Board committed reversible errors in its findings of fact and conclusions of law. The applicable standards for the determination of the issues, presented by cross-motions for summary judgment, are those of the Wunderlich Act. The Board's findings of fact are final if supported by substantial evidence, and its decisions of questions of law are open to independent judicial consideration. 41 U.S.C. §§ 321, 322 (1964).

The facts applicable to all three claims are few. The lake to be created by the John Day Dam required the relocation of 7 miles of Washington State highway and of the same number of miles of the line of the Spokane, Portland and Seattle Railway Co. The new highway was to be approximately 200 feet north and 50 feet above the relocated railroad line. The relocation was the subject of contracts involving the Corps of Engineers, the Washington State Highway Commission, and the railway company.

In accordance with its contract with the Corps, the Highway Commission on June 19, 1961 awarded a contract for relocation of 3½ miles of highway to a firm called Erland & Blickle, herein "Erland." Work was to be completed within 200 working days, or by approximately April 30, 1962. On March 26, 1962 the Corps of Engineers awarded a contract to plaintiff—the contract under which the dispute arises—for the entire 7 miles of railroad relocation and the western 3½ miles of highway relocation.

On the same day, plaintiff was given notice to proceed.

Plaintiff complains of three separate work restrictions or stop orders which, it claims, required that it use its equipment in a less efficient manner than contemplated in its approved progress schedule. Additional work by plaintiff, connected with two of the three claims made, has been paid for. The claims now in suit are for delay or "impact" costs.

Relying upon both the Changes and the Suspension of Work clauses in its contract, plaintiff contends that each of the three stop orders constituted a constructive change or a delay or suspension of the work for an unreasonable period, for the convenience of the Government. The Board denied all parts of the claim, holding that none of the delays was unreasonable.

The Board was correct in the decisions of law here brought into question. As to the challenged findings of fact, in seeking to overturn decisions of fact, a plaintiff assumes a heavy burden of showing that there is no evidence of substance to support the Board's findings and that the evidence of substance compellingly supports a contrary finding. Koppers Co. v. United States, 405 F.2d 554, 558–559, 186 Ct.Cl. 142, 147–151 (1968); Rice v. United States, 428 F.2d 1311, 1314–1315, 192 Ct.Cl. 903, 909 (1970). Plaintiff has failed to meet its burden. The three claims will be discussed separately.

1. *The stop order in the area of spillage from above.* Erland's work on the highway, above the railway line which plaintiff was to relocate, required the blasting of rock. Blasted rock and earth were pushed over the side of the road and fell on plaintiff's work site. On May 25, 1962, therefore, the contracting officer instructed plaintiff not to excavate in the area until a survey was made to determine pay quantities of material to be excavated. Photogrammetric measurements of the area were then made by the Corps, and on their

completion on August 22, 1962 plaintiff was permitted to begin work in the spillage area.

Plaintiff contends it did not have and could not reasonably have had notice that there would be such spillage in May from the Erland work as might delay its work. Substantial evidence supports the Board's conclusion to the contrary.

Work by Erland was in progress during the period of bidding for plaintiff's contract, January 26, 1962 to March 13, 1962. Franklin Drake, president of plaintiff, visited the site during that time, in February 1962, observed the status of the work going on, and saw that it would involve excavation by drilling and blasting rock. He even saw, in his words, "evidence of a minor amount of spillage of common materials" over the Erland cut.

The Board may have misread the transcript, in its finding that the witness then knew that Erland's modified completion was mid-May 1962 (and thus had actual notice of the possible effects on plaintiff's work of Erland's blasting). The transcript shows only that the witness testified that "I know what it [the modified completion date] is now." The seeming error does not vitiate the ultimate finding that plaintiff had sufficient notice of possible spillage in May, for complete information was available to plaintiff for the asking or the looking.

Mr. Drake testified that he checked with the Highway Commission at some time prior to making his bid on March 13, 1962 and learned that Erland's completion date was "approximately April 30, 1962." (In fact, Erland did not complete its work until September 1962.)

With notice of the likelihood of blasting and, of course, appreciation that on such a hill spillage was quite possible if materials were there to be spilled, he made no further inquiries at the time, either at the time he was awarded the contract on March 26, or before submitting, on April 24, the progress schedule which it is now claimed was disrupted by unanticipated rock spillage in May. Had he made another inquiry of the Highway Commission towards April 24 he would surely have learned of the incomplete state of the work and of the postponed completion date. Had he or his superintendent walked 200 feet up the hill and looked at the Erland work again, he would surely have seen the likelihood of rock spillage in May. For there is testimony that even in March "it was apparent * * * that there was several hundred thousand yards of rock excavation to be completed [by Erland], and it would take several months to do it."

■ Plaintiff intimates that defendant has failed to perform its duty to advise it that Erland would be delayed and thus might interfere with plaintiff's work. Such an obligation does not arise where the information is equally available to plaintiff. Bateson-Stolte, Inc. v. United States, 172 F.Supp. 454, 456–457, 145 Ct.Cl. 387, 391–392 (1959); Ragonese v. United States, 120 F.Supp. 768, 770, 128 Ct.Cl. 156, 162 (1954). Plaintiff obviously looked to its own investigation of the Erland site, 200 feet away, and to inquiries to the Highway Commission—matters readily open to it —for an understanding of the implications for its work of Erland's work and completion date. Plaintiff simply failed to look or ask.

Plaintiff's president, Mr. Drake, was not the only source of plaintiff's notice of the blasting to be done by Erland and its possible consequences. Plaintiff's project engineer, a Mr. Schweizer, also knew of the blasting to be done by Erland above the area where plaintiff would excavate. Schweizer, employed at the time of the site investigation by a rival contractor planning to bid on the job, saw the site and Erland's equipment and " * * * what kind of excavation he [Erland] was going to have up there when he arrived at the spillage area."

There came a time, of course, when plaintiff had actual notice of the spillage. Schweizer testified that this came

on May 12, 1962. Entries in the plaintiff's log, however, show that the plaintiff set slope stakes at the east end of the spillage area on April 23 and, skipping the spillage area, at the west end on April 25. Schweizer had no explanation for the skipping, except to surmise that it was unsafe to set stakes in the area. His testimony permits an inference that plaintiff had actual knowledge of the blasting, if not all the spillage, by April 23, before it submitted its progress schedule on April 24.

Once the spillage took place, plaintiff could not begin its work until a survey was made of the amounts to be excavated. The Board correctly held that the contract obligated the Government to compute, before plaintiff could start work, the quantities of material to be excavated. Schweizer admitted that plaintiff would not proceed to excavate the spillage area until this was done.

Plaintiff points to nothing in the record showing that defendant unreasonably delayed the survey. The surveyors could not safely enter the area until Erland was done blasting on July 27, 1962. Work on the survey began even before Erland was completed; some minor spillage by Erland took place as late as August. There is evidence the Corps was reasonably prompt in getting the results of the survey to plaintiff.

Plaintiff urges that the Corps failed to exercise proper control over Erland, yet points to no evidence showing damage to it by any deficiency of control. The evidence is that Erland could not perform the type of work required, on a hill of such a slope, without such spillage as took place. Hence "control" of Erland could not have prevented the spillage, and had Erland been ordered to remove the spillage, plaintiff would have lost the opportunity to do the extra excavation work and, as one witness pointed out, might have been doubly delayed by the conflicts which tend to arise between two contractors in the same area.

■ 2. *The order to finish Reach 1 before beginning work elsewhere.* The next claimed restriction was imposed on October 5, 1962 when the Government ordered certain additional work done on a section of the work known as "reach" 1, and directed that work on other reaches not be begun until reaches already underway were completed. This restriction was listed on November 19, 1962.

The Board did not determine whether Reach 1 was or was not complete at the time of the order, and it is unnecessary to resolve the continuing dispute over that point in order to dispose of the challenge to the Board's decision.

The Board held (1) that if the work on Reach 1 were incomplete at the time of the order to do more work on it, then the Government had the right, under clause 1–09 of the technical provisions of the contract, to order completion of the reach before work was begun on other reaches; and (2) that even if the reach were complete at the time of the order, once additional work on the reach was ordered under the Changes clause, petitioner would come under a duty, by virtue of clause 1–09 and the Changes clause, to proceed with the work as changed, and complete it before going on to another reach.

Clause 1–09 in relevant part provides that:

> The Contractor shall plan his operations so that work started in a section or reach is continued without delay until complete in order to permit the Spokane, Portland and Seattle Communications and Railway Signal Department to erect communication lines, rock fences, and signal foundations in each section as it is completed. The extent to which the Contractor will be allowed to start work in separate areas will be limited to that which can be progressed and completed within a reasonable time limit with the personnel, material and equipment which the Contractor will have available.

The Board was correct. The clause permits the Government to order com-

pletion of a reach before other reaches are begun.

Plaintiff would construe the Government's right as conditioned on a demand by the railroad company to begin work. For this plaintiff relies on the reference in the first quoted sentence to continuation of work to completion "in order to permit" the railway company to come in to do its work. These words cannot be enlarged to mean that the Government must wait for an actual demand by the railroad. No such condition is put on an order scheduling work, which the contracting officer believes is required in the interest of facilitating the work to follow, by the railroad.

In any event, either the reach was incomplete at the time of the change order, in which case the Government could make the stop order under clause 1-09, or it became incomplete on the exercise of the Government's indubitable right under the Changes clause to order additional work to be done on the reach.

3. *The suspension of work by reason of the discovered weak highway foundation.* On November 9, 1962, the Corps gave instructions to suspend work in a stated area, pending determination of possible changes.

Plaintiff had earlier been instructed to perform an exploratory excavation into this area and the highway embankment constructed above it. The exploration had revealed an unsatisfactory foundation condition under the highway embankment constituting a threat to the railroad embankment below.

Following the stop order, changes in railroad alignment were decided upon by the Corps and revised drawings made. On November 29, 1962, the stop order was lifted and plaintiff was ordered to proceed in accordance with the revised drawings to excavate and rebuild a section of the highway and to construct some 2,200 feet of railway grade on a revised alignment. By December 3, the Board found, plaintiff had been given sufficient instructions and sketches to allow it to proceed. The Board held the delay from November 9 to December 3 not unreasonable. The record sufficiently supports this decision.

The contract gave petitioner notice that changes in highway work would require approval of the highway authorities, and changes in railroad work the approval of the railroad, and that "the time so consumed shall be in addition to that which would be permitted" under the Changes clause. Both types of work were involved, both types of approval were required. No delay in obtaining the approvals appears.

Petitioner challenges the decision on the date of the end of the delay. One contention is that a source of borrow for the work was not made available. Petitioner admits, however, that the evidence was in conflict. Another contention is that petitioner could not begin work until it received drawings on December 21. Its witness so testified. A Government witness testified, however, that a certain drawing of November 30 and a restaking of the area by a Government crew on December 3–4 gave plaintiff sufficient knowledge. The testimony was that the Corps made an aerial survey, set up new templates, staked the revised alignment, and furnished sketches within a reasonable time, even working its staff overtime to give the necessary information to petitioner as soon as possible. The Board preferred the Government's testimony.

The Board's conclusion rests on a balance of apparently equally credible and substantial testimony, and therefore cannot be overturned. Koppers Co. v. United States, *supra,* 405 F.2d at 557–558, 186 Ct.Cl. at 148–149; Vann v. United States, 420 F.2d 968, 989, 190 Ct.Cl. 546, 584 (1970).

*Conclusion*

For the reasons stated, plaintiff's motion for summary judgment is denied, defendant's cross-motion is granted, and the petition is dismissed.